**UNITED STATES, Appellee,**

v.

**Thomas W. DOWTY, Lieutenant,
U.S. Navy, Appellant.**

No. 97–6001.
Crim.App. No. 96 1535.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 8, 1997.

Decided May 22, 1998.

**104**

For Appellant: *Lieutenant Jeffrey K. Van Nest,* JAGC, USNR (argued).

For Appellee: *Captain Paul D. Kovac,* USMC (argued); *Colonel Charles Wm. Dorman,* USMC, *Commander David H. Myers,* JAGC, USN, and *Lieutenant Randy S. Kravis,* JAGC, USNR (on brief).

*Opinion of the Court*

EFFRON, Judge:

In an appeal under Article 62(a)(1), Uniform Code of Military Justice, 10 USC § 862(a)(1) (1983), the Government asked the Court of Criminal Appeals to review a ruling of the military judge at appellant's general court-martial that the statute of limitations in Article 43(b)(1), UCMJ, 10 USC § 843(b)(1), barred appellant's prosecution on 12 of the 16 specifications alleging false official statements, larceny, forgery, and false claims against the United States, *see* Arts. 107, 121, 123, and 132, UCMJ, 10 USC §§ 907, 921, 923, and 932, respectively. On May 6, 1997, the Court of Criminal Appeals set aside the military judge's dismissal of the affected specifications, thereby permitting trial to proceed on all 16 specifications. 46 MJ 845. On June 19, 1997, the Court of Criminal Appeals denied appellant's timely filed request for reconsideration *en banc,* and the next day appellant filed his petition for review of that decision in this Court. We granted review. 48 MJ 328 (1997). We affirm the decision of the lower court for the reasons discussed below.

I

Appellant, a lieutenant in the Naval Reserve, has been on continuous active duty since June 17, 1981, which includes the period of time covered by the charges, trial, and appellate proceedings in this case. He has been subject to the Uniform Code of Military Justice at all relevant times. *See* Art. 2(a)(1), UCMJ, 10 USC § 802(a)(1).

While serving on active duty in the Medical Service Corps of the Navy, appellant allegedly conducted a private business named Health Care Associates, under which he submitted claims for reimbursement to the National Naval Medical Center at Bethesda, Maryland. The charges in this case allege that the claims submitted by appellant were fraudulent.

On September 28, 1993, the Defense Fraud, Waste, and Abuse Hotline received an anonymous allegation that claims submitted by appellant's company to the Government between 1989 and 1992 were false and forged; that such claims had resulted in payment by the Government of $15,000 for services that appellant's company never had rendered; and that appellant had deposited the checks paid by the Government for these fraudulent claims into his personal checking account. The caller subsequently was identified as appellant's former wife.

The matter was referred to the Naval Criminal Investigative Service (NCIS), which opened an investigation. During this investigation, NCIS agents determined that it would be necessary to review appellant's bank records, and they requested the Department of Defense Inspector General (DoD IG) to issue an appropriate administrative subpoena under the Right to Financial Privacy Act (RFPA), 12 USC §§ 3401-3422, to the custodian of the bank records of appellant and Health Care Associates. The subpoena was issued on July 27, 1994. *See* 12 USC § 3405.

In accordance with the statute, a copy of the subpoena was mailed to appellant's last known address on August 1, 1994. *See* 12 USC § 3405(2). After the notice was returned without having been forwarded to appellant, it was served personally on appellant on September 9, 1994.

Appellant, exercising his rights under the statute, 12 USC § 3410, filed a motion on September 15, 1994, in the United States District Court for the District of Columbia challenging the Government's access to the records. Eight months later, the District Court dismissed appellant's motion on May

17, 1995. Pursuant to the subpoena, NCIS obtained appellant's bank records, and the investigation proceeded to completion in mid-December 1995.

Charges were preferred against appellant on January 17, 1996. The charge sheet contained four charges, with four specifications each. Twelve of the sixteen specifications were based on acts allegedly committed between "on or about" July 18, 1990, and "on or about" January 17, 1991. The remaining four specifications were based on acts allegedly committed after January 23, 1991. The charges were received by the summary court-martial convening authority on January 23, 1996, thereby tolling the running of the UCMJ's statute of limitations under Article 43(b)(1), which provides:

> Except as otherwise provided in this section (article), a person charged with an offense is not liable to be tried by court-martial if the offense was committed more than five years before the receipt of sworn charges and specifications by an officer exercising summary court-martial jurisdiction over the command.

The charges were referred to a general court-martial.

At trial, appellant moved to dismiss the twelve specifications alleging offenses in 1990, citing the 5–year statute of limitations in Article 43(b)(1).[1] The Government acknowledged that more than 5 years had transpired between the dates of the alleged offenses and receipt of charges by the summary court-martial convening authority, but it argued that the period of 8 months and 2 days in which appellant's motion challenging the subpoena was pending in federal district court should be excluded under the RFPA. The relevant provision of that statute reads:

> If any individual files a motion or application under this chapter which has the effect of delaying the access of a Government authority to financial records pertaining to such individual, any applicable statute of limitations shall be deemed to be tolled for the period extending from the date such motion or application was filed

until the date upon which the motion or application is decided.

12 USC § 3419. If the period of the litigation in federal district court is excluded, the charges were timely filed with the summary court-martial convening authority within the 5–year period provided in Article 43(b)(1).

The military judge, however, declined to apply the tolling provisions of the RFPA, relying primarily on two grounds. First, he ruled that Article 43 exclusively "controls the issue of what, if any, periods of time are subtracted from computation of the statute of limitations ...," and no language in Article 43 permits consideration of the RFPA to toll the running of the statute. Second, he ruled that, even if § 3419 of the RFPA did apply, the time period during which appellant's challenge was under consideration did not toll the running of the statute. He stated that appellant's challenge "did not have the effect of delaying governmental access to the subpoenaed records" because the Government could have obtained access through appellant's former wife, who was a joint owner of the bank accounts in question, without invoking the RFPA.

On the Government's appeal of this ruling, the Court of Criminal Appeals disagreed with the reasoning of the military judge. With respect to the relationship between the tolling provisions of the RFPA and Article 43, the court concluded that "both the Right to Financial Privacy Act and the applicable statute of limitations [Article 43(b)(1)] are shields and not swords, and, having picked up both, appell[ant] is without a free hand to assert one over the other." 46 MJ at 848.

Second, as to whether appellant's challenge to the subpoena actually delayed the investigators' access to the bank accounts, the court held that the military judge had "applied the wrong legal standard." *Id.* at 848. The court reasoned that "any requirement for the use and failure of extrajudicial methods [to obtain the accounts through appellant's former wife] is simply inconsistent with the statutory scheme and fundamental fairness

---

**1.** Appellant's motion and this appeal do not affect the validity of the specifications concerning acts committed after January 23, 1991.

for both parties. The Government followed the rules, and we commend rather than second-guess." 46 MJ at 849 (citation omitted).

## II

The primary question in this case is whether servicemembers may avail themselves of the protections of the RFPA and, if so, what effect such action has on application of Article 43(b)(1), the statute of limitations in the Uniform Code of Military Justice.

## A

■■ Under the Constitution, "Congress has 'plenary control over rights, duties, and responsibilities in the framework of the Military Establishment, including regulations, procedures, and remedies related to military discipline.'" *Weiss v. United States*, 510 U.S. 163, 177, 114 S.Ct. 752, 760, 127 L.Ed.2d 1 (1994); *see* U.S. Const., Art. I, § 8, cl. 14. While members of the armed forces are not excluded from the protections of the Constitution, "the different character of the military community and of the military mission requires a different application of those protections." *Parker v. Levy*, 417 U.S. 733, 758, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974).

■■ The Uniform Code of Military Justice represents the primary expression of congressional action on the subject of military discipline. The Code establishes an integrated system of investigation, trial, and appeal that is separate from the criminal justice proceedings conducted in the U.S. district courts. *Compare* Title 10, USC, Chapter 47, *with* Titles 18 and 28, USC. Although there are many similarities between military and civilian criminal proceedings—including a general direction to apply civilian procedures that are not contrary to or inconsistent with the Uniform Code, *see* Art. 36(a), UCMJ, 10 USC § 836(a)—and although military appellate decisions frequently look to parallel civilian statutes for guidance, the systems are separate as a matter of law. Title 18 amendments to the Federal Criminal Code, changes in the Federal Rules of Criminal Procedure, and revisions of the Federal Rules of Evidence do not directly affect proceedings under the Uniform Code of Military Justice except to

the extent that the Code or the Manual for Courts–Martial specifically provides for incorporation of such changes. *See, e.g.*, Arts. 36 and 134 (clause 3), UCMJ, 10 USC §§ 836 and 934, respectively; Mil.R.Evid. 101(b)(1), Manual for Courts–Martial, United States (1995 ed.).

Because we traditionally have viewed the Uniform Code of Military Justice as Congress' primary expression of the rights and responsibilities of servicemembers, we have been cautious about applying statutes outside the Code to the conduct and review of court-martial proceedings. We have not turned a blind eye, however, to all statutes outside the Code.

The interplay between the Uniform Code and other statutes is illustrated by application of the All Writs Act, 28 USC § 1651(a), to appellate tribunals under the Uniform Code of Military Justice. The All Writs Act provides that extraordinary writs may be issued by "[t]he Supreme Court and all courts established by Act of Congress." A narrow reading of the UCMJ would preclude any proceedings in our Court subsequent to completion of direct appellate review. *See* Arts. 66, 67, and 76, UCMJ, 10 USC §§ 866 and 867 (1994), and 876, respectively. Nonetheless, in *United States v. Frischholz*, 16 USCMA 150, 36 CMR 306 (1966), this Court held that we had jurisdiction under the All Writs Act to consider a request for extraordinary relief, even though direct appellate review had long since been completed.

■■ The authority of this Court to exercise jurisdiction under the All Writs Act has been recognized by the Supreme Court, *Noyd v. Bond*, 395 U.S. 683, 695 n. 7, 89 S.Ct. 1876, 1883 n. 7, 23 L.Ed.2d 631 (1969), and has been exercised in a wide variety of circumstances, including instances where this Court would not have had direct review of the proceedings. *E.g.*, *United States Navy–Marine Corps. Court of Military Review v. Carlucci*, 26 MJ 328 (CMA 1988). The authority of the Courts of Criminal Appeals[2] to exercise jurisdiction under the All Writs Act also is well established. *Dettinger v. United States*, 7 MJ 216, 219 (CMA 1979); Rule

---

**2.** Formerly the Courts of Military Review, *see* 41  MJ 213, 229 n. * (1994).

4(b)(1), Rules of Practice and Procedure, United States Court of Appeals for the Armed Forces. Of particular note, our leading case applying the RFPA to protect members of the armed forces, *United States v. Curtin,* 44 MJ 439 (1996)—which is discussed in Part IIB of this opinion—is one in which appellate jurisdiction did not arise under the Uniform Code of Military Justice but, rather, involved a petition for extraordinary relief filed by the Government with the Court of Criminal Appeals under the All Writs Act.

■ While members of the armed forces do not enjoy the full panoply of constitutional and statutory rights available to others, they are no less citizens of the United States. In the absence of a valid military purpose requiring a different result, generally applicable statutes normally are available to protect servicemembers in their personal affairs. *Cf.* para. 14c(2)(a)(iii), Part IV, Manual, *supra.*

The interplay between military purposes and the private rights of servicemembers is illustrated by the manner in which this Court has considered the relationship between the federal wiretap statutes and proceedings under the Code. At the time the UCMJ was enacted, the Supreme Court's prevailing doctrine held that use of a wiretap to obtain evidence of a telephone conversation did not violate the Constitution. *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928).[3] Congress subsequently enacted 47 USC § 605 as part of the Federal Communications Act, which established a restriction on use of such intercepted communications. The President, in the Manual for Courts–Martial, United States, 1951, provided that wiretap evidence would be inadmissible in courts-martial if obtained under conditions that would prohibit its use in a United States District Court. In *United States v. Noce,* 5 USCMA 715, 19 CMR 11 (1955), our Court declined to apply the seemingly unrestricted statutory prohibition in § 605 to an on-post telephone system. Chief Judge Quinn stated:

We are of the opinion that a self-contained military communications system is not the kind of system intended by Congress to be included under the provisions of Section 605. Although a particular subject may affect both the civilian and military communities, basic differences between the two frequently require and legally justify a difference in treatment. It requires no elaborate recitation of reasons to emphasize the need in the military establishment for close supervision and control over its own communication systems.... This was undoubtedly appreciated by Congress. And, it seems to us that Congress would not restrict the power of the military establishment without a specific declaration to that effect.

5 USCMA at 721, 19 CMR at 17 (citation omitted).

■ In light of subsequent developments in applicable constitutional doctrine,[4] as well as revisions in the applicable statutes[5] and the Manual for Courts–Martial,[6] we express no opinion on the continued vitality of the specific holding in *Noce,* but we emphasize that the analytical framework in that case remains valid. *Noce* provides a useful reminder that a generally applicable statute must be viewed in the context of the relationship between the purposes of the statute and any potentially contradictory military purpose to determine the extent, if any, that the statute will apply to military personnel and court-martial proceedings.

B

In the present case, we first must consider whether members of the armed forces in the circumstances of this appellant are covered by the protections of the RFPA. In a notable

---

3. *Olmstead* was overruled by *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967).

4. *See* n. 3, *supra.*

5. *See* 18 USC §§ 2510–2522; *see generally Chandler v. U.S. Army,* 125 F.3d 1296, 1299 (9th Cir.1997) (Although federal wiretap laws do not expressly mention the military departments, "[t]here is no exception in the law for the Army.").

6. *See* Mil.R.Evid. 317 ("Interception of wire and oral communications").

similarity to the wiretap laws, the RFPA had its origin in a Supreme Court decision denying application of the Fourth Amendment to a particular form of search and seizure. In *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), the Supreme Court held that customers of a bank have no Fourth Amendment expectation of privacy in the bank's records of the customers' financial transactions. Under *Miller,* as a matter of constitutional law, NCIS agents and DoD IG investigators could have seized appellant's bank records without either his knowledge or his consent.

In "response" to the *Miller* decision, however, Congress decided to provide a significant degree of statutory protection for a customer's bank records. *See* H. Rep. No. 1383, 95th Cong., 2d Sess. 34 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 9273, 9306. The result was passage in 1978 of the RFPA, 12 USC §§ 3401–3422, which prohibits the Federal Government from obtaining such records from financial institutions unless the customer consents (§ 3404) or the Government pursues one of the following four procedural options: an administrative subpoena (§ 3405), a search warrant (§ 3406), a judicial subpoena (§ 3407), or a formal written request (§ 3408). 12 USC § 3402.

If the Government seeks to obtain the records through a search warrant, the customer's rights are protected by the requirement that the Government must proceed under the Federal Rules of Criminal Procedure. § 3406(a). However, no notice of access to the records is required until at least 90 days after the warrant is served. § 3406(b) and (c). If the Government seeks to invoke one of the other options, the RFPA contains specific procedures to protect the individual's privacy interests. Each customer listed on the account must be notified that the Government has requested access to his or her records. *See* 12 USC §§ 3405(2), 3407(2), and 3408(4). If the customer does not contest the Government's access, then the financial institution may turn over the records. If the customer decides to challenge the Government's access to the records, however, then the customer may file a motion in the appropriate United States District Court to prevent the Government from gaining access to the records. *See* 12 USC § 3410; *S.E.C. v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 745, 104 S.Ct. 2720, 2726–27, 81 L.Ed.2d 615 (1984); *McDonough v. Widnall,* 891 F.Supp. 1439, 1448 (D.Colo.1995). As noted above in Part I, if the individual files such a motion, "which has the effect of delaying the access of a Government authority" to the records, *"any applicable statute of limitations* shall be deemed to be tolled for the period extending from the date such motion or application was filed until the date upon which the motion or application is decided." 12 USC § 3419 (emphasis added).

The statutory provisions in the RFPA embody an express congressional determination that a person who receives notice of a subpoena must make a choice: either acquiesce in the Government's statutory authority to access the records (§ 3402) or invoke the statutory proceedings to contest the access, recognizing that "any applicable" statute of limitations will be tolled during the pendency of the ensuing litigation.

The RFPA applies to access to customers' financial records by any "Government authority," § 3502, a term that is defined broadly in § 3401(3) as including "any agency or department of the United States, or any officer, employee, or agent thereof[.]" Reflecting congressional understanding that it could affect national security matters, the RFPA contains a limited exemption for "a Government authority authorized to conduct foreign counter- or foreign positive-intelligence activities." 12 USC § 3414(a)(1)(A). The Act also sets forth a variety of exceptions for other government activities, *see* 12 USC § 3413, but provides no exemption for the Department of Defense in general or for military disciplinary matters in particular. *Cf., e.g.,* 5 USC § 551(1)(F) (exclusion of courts-martial from coverage under the generally applicable provisions of the Administrative Procedure Act).

The Department of Defense has not attempted to exclude military personnel from the protections of the Act. On the contrary,

following enactment of the legislation, DoD issued a regulation that "implements" RFPA. Department of Defense Directive 5400.12, "Obtaining Information from Financial Institutions," § A (Feb. 6, 1980). The Directive, which "appl[ies] to the Office of the Secretary of Defense, the Military Departments, the Defense Investigative Service, and the National Security Agency," § B.1, provides guidance to DoD investigators, including the agents who sought the subpoena and issued the notice to appellant in this case.

Our Court recently has applied the RFPA to protect the privacy interests of members of the armed forces. Our decision in *United States v. Curtin*, 44 MJ 439 (1996), concerned judicial review of subpoenas for financial records issued by trial counsel under § 3407 of the RFPA. In *Curtin*, trial counsel provided notice to the accused's wife and her father, the subjects of the subpoena, who filed a motion at appellant's court-martial challenging the subpoena. *Id.* at 440. The military judge in *Curtin* ruled that the subpoenas were not judicial subpoenas covered by §§ 3407 and 3410 but were administrative subpoenas, which could be reviewed only by a United States District Court under § 3410(a).

We unanimously held that the military judge had jurisdiction to consider the validity of the subpoenas on the grounds that subpoenas issued under Article 46 and RCM 703 were judicial in nature, which thereby provided the servicemember with the right to judicial review under the RFPA (§ 3410(a)) by the court under whose authority the subpoenas had been issued—the court-martial. We had no hesitancy in applying the RFPA to protect the financial privacy interests of members of the armed forces.[7]

■ Appellant in the present case has not provided us with any basis for concluding that we were incorrect in *Curtin*, or any basis for concluding that the RFPA excludes members of the armed forces from its protection of financial privacy interests. As a matter of law, we conclude that the RFPA has covered applicable financial records of members of the armed forces since it was enacted in 1978.

## III

The second issue we must consider is the relationship between Article 43 of the UCMJ—which provides a statute of limitations "[e]xcept as otherwise provided in this section (article)"—and the tolling provision in RFPA, which in plain language applies to "any applicable statute of limitations." 12 USC § 3419.

■ Congress is not required to use specific language when enacting new legislation that has the effect of modifying prior legislation, including prior legislation that appears on its face to admit of limited or no exceptions. There is no legal requirement that Congress, in establishing a law with comprehensive effect, specifically amend all previously enacted legislation that it intends to affect. The question in each case is whether the new legislation can be fairly read to modify a prior statute. The answer depends on a number of factors, including: (1) whether the subsequent statute applies in general to circumstances governed by the prior statute; (2) whether failure to apply the challenged portion of the subsequent statute would be inconsistent with the statutory framework of the subsequent statute; and (3) whether application of the subsequent statute would be inconsistent with the statutory framework of the prior statute.

With respect to the first factor, as we have noted in Part IIB, the subsequent statute—the RFPA—applies in courts-martial to protect the financial privacy interests of members of the armed forces. With respect to the second factor, failure to apply the tolling provision in courts-martial would mean that members of the armed forces would have the

---

7. In *McDonough v. Widnall*, 891 F.Supp. 1439 (D.Colo.1995), the district court found numerous violations of the RFPA by the Air Force in obtaining bank records of an Air Force officer. Although the opinion suggested that the district courts have exclusive jurisdiction over challenges under the RFPA, *id.* at 1446–47, 1448, the district court did not have the benefit of our opinion in *Curtin*. The import of *McDonough*, for purposes of the present case, is its application of the RFPA to protect the financial privacy interests of members of the armed forces.

benefit of the RFPA—including the ability to challenge subpoenas in federal district courts—without the concomitant consequences of tolling the statute of limitations. Under these circumstances, servicemembers could convert the authority to litigate the validity of a subpoena, which was designed by Congress as a shield, into a sword that could sever the possibility of a court-martial when, as in this case, the litigation was of sufficient duration to extend beyond the basic statutory period of limitations. There is no reason to believe that Congress intended the RFPA to exempt servicemembers from accountability for misconduct when their civilian counterparts who invoked the same statute in similar circumstances would be required to defend against criminal charges. On the contrary, the statutory framework reflects a direct link between the opportunity to challenge the subpoena and the assurance that the Government will not be precluded from pursuing a criminal charge as a result of the delay occasioned by such a challenge.

With respect to the third factor, we note that this is not a case involving a fundamental principle of military law that admits of no exceptions. On the contrary, Article 43 is filled with exceptions and exclusions from the basic statute of limitations. Adding one more exception has no effect on the basic framework of military law.

The critical aspect of § 3419 with respect to the UCMJ is that § 3419 only affects "any applicable statute of limitations." If the RFPA did not protect the financial privacy interests of servicemembers when subject to military investigations, then we might be hesitant to conclude that other broadly worded language concerning statutes of limitations will affect Article 43. In this case, given the limitation that the tolling provision only applies to "applicable statutes of limitations," we have no reservation about applying it to circumstances in which servicemembers are authorized to use the shield of the RFPA to challenge subpoenas related to military investigations.

■ In view of these factors, we conclude that the RFPA, when enacted in 1978, permitted servicemembers to challenge applica-

ble subpoenas in the federal district courts, with the concomitant effect of tolling the applicable statute of limitations in Article 43 during the pendency of such litigation.

## IV

■ Eight years after passage of the RFPA, Congress modified Article 43 by increasing the basic statute of limitations from 3 to 5 years and modifying the phrasing of certain exceptions. Congress made no change, however, in the prefatory language, providing that the basic statute of limitations applied "[e]xcept as otherwise provided in this section (article). . . ." Pub.L. No. 99–661, § 805, 100 Stat. 3908 (Nov. 14, 1986). The military judge took note of the 1986 amendment and apparently concluded that, even if Congress initially had intended the 1978 enactment of the RFPA to apply to courts-martial, the 1986 amendment to Article 43 precluded application of the tolling provision because Congress reenacted the reference to exceptions "in" Article 43.

We do not agree. The legislative history of the 1986 amendments makes clear that Congress intended to reenact Article 43 with modifications directed solely at the length of the basic statute of limitations and the phrasing of the exceptions within the Article. *See* S.Rep. No. 331, 99th Cong., 2d Sess. 249–50 (1986), *reprinted in* 1986 U.S.Code Cong. & Admin.News 6444–45. There is no indication that Congress gave any consideration to the relationship of Article 43 to other statutes. Unless we were to hold that servicemembers cannot exercise any of the beneficial provisions of the RFPA—which we decline to do for the reasons noted in Part II—we could sustain the ruling of the military judge only by holding that Congress intended in 1986 to repeal application of the tolling provisions in § 3419 while leaving servicemembers free to delay proceedings by filing challenges to RFPA subpoenas in federal district court that could have the effect of delaying military justice proceedings past the applicable statute of limitations. Regardless of the circumstances which might justify application of the doctrine of repeal by implication, we decline to apply it in these circumstances where to

do so would undermine the basic framework of the statute at issue, the RFPA.

## V

We recognize that the Uniform Code of Military Justice is a special, well-integrated statute, and we exercise great caution in overlaying a generally applicable statute specifically onto the military system. Under the circumstances discussed above, however, we are persuaded that Congress intended that § 3419 of the RFPA toll the running of *all* applicable statutes of limitations, which clearly includes Article 43(b)(1), during a judicial challenge to a subpoena. In particular, we note the unambiguous language in RFPA; the circumstances of the legislative history; the contemporaneous implementation of the RFPA by the Department of Defense and the military departments; and judicial application of the RFPA generally to servicemembers. We decline now to deprive military personnel of these important privacy rights; and we decline, further, to create a special status for military personnel, whereby they could use the RFPA as a sword to bar criminal liability in situations in which their civilian counterparts could not do so. A citizen, whether military or civilian, cannot claim coverage of the RFPA to protect against intrusion by the Government into his private records while, at the same time, disclaim coverage of the RFPA to toll the running of a statute of limitations during his exercise of the very process under the statute by which he or she claims that protection.

## VI

Appellant urges us to adopt the alternative holding of the military judge to the effect that, even if RFPA fully applies, the challenge to the subpoena filed by appellant did not "ha[ve] the effect of delaying the access" of the Government to his financial records, which is a requirement of § 3419. The military judge held that, since appellant's wife was a joint account holder and since she alerted investigative authorities to the alleged fraudulent claims, the Government authorities could have obtained access

to the financial records through her. From this speculation, the military judge concluded that the delay was not caused by appellant's filing but through the Government's failure to obtain the records from appellant's wife.

There is nothing in the record demonstrating that the wife in fact would have consented to the Government's request for access to the records. We are all too familiar with cases in which a criminal complaint is initiated by a spouse who subsequently changes his or her testimony, declines to testify, or refuses to provide consent to a search due to a change of heart. In any case, however, we do not regard such possibilities as determinative. The RFPA does not require investigators to seek alternative sources of access to records before obtaining a subpoena. *See United States v. Wilson,* 571 F.Supp. 1417, 1420–21 (S.D.N.Y.1983). On the contrary, while investigators are not precluded from seeking alternative sources, the entire thrust of the legislation and implementing directives is to establish formal procedures to protect the financial privacy rights of individuals through notice of proposed access and a formal opportunity to challenge.

Here, appellant urges us to fault the investigators because they proceeded in accordance with rules designed to protect his rights. We find nothing in the statute or its legislative history that would lead us to interpret the statute in a manner that would eviscerate the privacy protections that Congress consciously and carefully created. We decline to adopt a holding that would have the effect of encouraging law enforcement investigators to pursue back-door and side-door access to bank records, *see* n. 7, *supra,* rather than to seek such records openly under the RFPA, which provides the owner of those records a process to attempt to maintain confidentiality.

## VII

When appellant affirmatively invoked the protections of the RFPA in an effort to block government access to his financial records, he submitted himself to the integrated provisions of that statute, including the provision under which the applicable statute of limita-

tions was tolled. Appellant does not dispute the fact that if the 8–month period in which his judicial challenge to the subpoena was pending is excluded, running of the UCMJ statute of limitations was terminated prior to expiration of the 5–year period specified in Article 43. Because we conclude as a matter of law that the 8–month period should be excluded, we hold that Article 43 does not bar trial on any of the specifications now pending against appellant.[8]

## VIII

The decision of the United States Navy–Marine Corps Court of Criminal Appeals, setting aside dismissal of 12 specifications, is affirmed. The record of trial is returned to the Judge Advocate General of the Navy for remand to the military judge for further proceedings.

Judges CRAWFORD and GIERKE concur.

SULLIVAN, Judge (concurring in part and in the result):

I completely agree with the excellent opinion of my learned Brother, Judge Effron, in affirming the decision below setting aside the military judge's dismissal of the relevant specifications. I write separately only to observe that a common sense construction of the federal statutes at issue and notions of basic fairness allow tolling the statute of limitations in this case.

The narrow view of the dissent in its cry to restrict justice in the military to "within the four corners of the Articles of War and, more recently, if indeed 47 years is recent, the Uniform Code of Military Justice," 48 MJ at 113, seems to be an extreme position for a Judge on a modern Federal court which is tasked by Congress to oversee the military justice system. His dissent in my opinion is like finding a fresh dinosaur footprint among four M1A1 tank tracks on a tank trail at Fort Hood, Texas.

Of course, our Court may look outside the UCMJ to do justice in a case. For example, regularly do we apply the Constitution and the Bill of Rights to the cases of our service men and women. Indeed, Article 36(a), UCMJ, 10 USC § 836(a), specifies that "the principles of law ... generally recognized in the trial of criminal cases in the United States District Courts" be applied to cases under the UCMJ.

One of our Presidents, who had a special compassion for our military, was Theodore Roosevelt.* He wanted the military to be

---

**8.** Contrary to the suggestion in the dissent, this is not a case involving a belated attempt by prosecutors to salvage time-barred charges by combing the United States Code to dredge up a remote banking statute and thereby "circumvent" the military's statute of limitations. This is a case in which a person subject to the Uniform Code of Military Justice affirmatively sought the protection of another federal statute to limit the scope of a military investigation. He cannot now pick and choose which of those provisions he wants to apply to him.

The dissent also suggests that Congress is constitutionally precluded from applying to the armed forces a provision that generally restricts statutes of limitations unless the statute expressly refers to the armed forces. Although the presence or absence of a reference to the armed forces may be useful on a question of statutory interpretation, the dissent cites no authority for the proposition that, as a matter of constitutional law, Congress cannot affect the rules and regulations for the government of the armed forces through a generally applicable statute. Moreover, even assuming that the dissent is correct in asserting that the primary constitutional basis for

enactment of the RFPA is the Commerce Clause, U.S. Const., Art. I, § 8, cl. 3, that is a very different matter from concluding that Congress is disabled from ensuring that the purposes of the legislation are furthered by enacting a general provision for tolling all applicable statutes of limitations—including those in both civilian and military tribunals. See U.S. Const., Art. I, § 8, cl. 18 (congressional power to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.") In that regard, we note that even though the primary source of authority for the All Writs Act, 28 USC § 1651(a), may be found in Article III of the Constitution, that has not precluded application of the All Writs Act to proceedings under the UCMJ. See Part IIA, supra.

* Theodore Roosevelt was the first President to go underwater in a submarine (the USS PLUNGER). After he came up, he was impressed with the dangers of the "silent service" and authorized hazardous-duty pay for submariners—a benefit which continues today.

treated equally with all citizens and proclaimed, "A man who is good enough to shed his blood for the country is good enough to be given a square deal afterwards. More than that no man is entitled to, and less than that no man shall have." (Speech, Springfield, Illinois, June 4, 1903.)

The dissent must realize that, subject to military necessity and the specific dictates of Congress, the Constitution and all laws of the United States apply to the military. Servicemembers are citizens of the United States and subject to the full weight and protection of its laws unless excluded by the Constitution or limited by Congress. The military is not the 51st state. Our military is governed by the Law of the Land.

COX, Chief Judge (dissenting):

For over 192 years, military justice laws regarding statutes of limitations have been contained within the four corners of the Articles of War and, more recently, if indeed 47 years is recent, the Uniform Code of Military Justice. My colleagues, without hesitation or remorse, expand the reach of military justice law by assimilating 12 USC § 3419 into Article 43, Uniform Code of Military Justice, 10 USC § 843. Because I am convinced that the Uniform Code of Military Justice is the exclusive body of law governing the limitation on the exercise of court-martial jurisdiction, I respectfully dissent.

Statutes of limitations create seemingly intolerable results as the party who successfully pleads the statute as a bar to prosecution, indeed, escapes prosecution. Thus, quite naturally, prosecutors eagerly seek avenues to circumvent the plain language of such statutes. There is nothing new about the Government's effort to enlarge the limitations via statutory construction. Colonel Winthrop in his seminal work on military law made the following observation regarding various efforts to enlarge by statutory interpretation the then-existing Statute of Limitations found in Article 103 of the Articles of War (1806 as amended in 1890):

It will thus be seen that the military statute of limitations admits of no exceptions to its operation other than such as are indicated in the statute itself.

W. Winthrop, *Military Law And Precedents* 258 (2d ed. 1920 Reprint).

Let there be no mistake. The issue presented by this case is about assimilating, without express statutory language, a remote federal statute of limitations into the Uniform Code of Military Justice. This is a significant departure from the traditional approach of statutory construction of the military statute of limitations. I do not view the broad approach undertaken by my colleagues as either desirable or necessary to carry out the principal purposes of the Uniform Code of Military Justice.

The majority opinion makes an eloquent case for its unprecedented expansion of Article 43. Indeed, when you read that opinion, you get a warm feeling that it is the right thing to do. It seems just and proper that we toll the statute of limitations against this appellant, because it must be said that he availed himself of the procedural protections of the Right to Financial Privacy Act, 12 USC §§ 3401–3422. How can he now be heard to complain that the statute of limitations found in Article 43 was tolled while he sought the protection of the courts from the governmental search of his bank accounts?

This approach, however, begs the question: Can we, or should we, look without the Uniform Code of Military Justice to find laws to expand the statute of limitations on prosecutions of offenses committed by military members?

It seems prudent for us to reflect upon our genesis. From whence comes the congressional authority to regulate the armed forces? From whence comes the authority which permits Congress to enact rules regarding the right to financial privacy in bank-account records?

I find that Article I, § 8, Clause 14 of the Constitution empowers Congress to "make Rules for the Government and Regulation of the land and naval Forces." Likewise, Article I, § 8, Clause 3 provides the authority to "regulate Commerce ... among the several States," which power has long since been construed to permit Congress to provide for

reasonable regulation of financial institutions engaged in interstate commerce or availing themselves of various federal programs such as the Federal Deposit Insurance Corporation (FDIC). Title 12, §§ 3401–3422, was enacted under the latter authority. Article 43 of the Uniform Code was enacted under the former. Unless Congress makes clear that it is enacting a statute designed for the "Government and Regulation" of the armed forces, I am reluctant to construe a remote statute clearly designed to accomplish some purpose other than to regulate the armed forces as being applicable to trials by courts-martial.

Accordingly, I would uphold the ruling of the military judge to dismiss the three specifications in each charge as being barred by Article 43(b)(1), UCMJ, 10 USC § 843(b)(1).