*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Derrick L. DINGER, Gunnery Sergeant (Ret.)
United States Marine Corps, Appellant

**No. 17-0510**

Crim. App. No. 201600108

Argued April 5, 2018—Decided June 18, 2018

Military Judge: Christopher M. Greer

For Appellant: *Captain Bree A. Ermentrout,* JAGC, USN (argued).

For Appellee: *Captain Brian L. Ferrell,* USMC (argued); *Colonel Valerie C. Danyluk,* USMC, *Major Kelli A. O'Neil,* USMC, and *Brian Keller,* Esq. (on brief).

Chief Judge STUCKY delivered the opinion of the Court, in which Judges RYAN, OHLSON, SPARKS, and MAGGS, joined.

————————

Chief Judge STUCKY delivered the opinion of the Court.[1]

Appellant, a retiree, was convicted by a general court-martial. His approved sentence includes a dishonorable discharge. We granted review to determine whether such a sentence is prohibited for a Marine Corps retiree by 10 U.S.C. § 6332 (2012). We hold that a court-martial is not prohibited from adjudging a punitive discharge in the case of such a retiree and, to the extent our precedents suggest otherwise, they are overruled.

---

[1] We heard oral argument in this case at Fort Hood, Killeen, Texas, as part of the Court's Project Outreach. This practice was developed as a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

### I. Background

Appellant served on active duty in the United States Marine Corps from July 18, 1983, until October 31, 2003. He transferred to the Fleet Marine Corps Reserve on November 1, 2003, and then to the active duty retired list on August 1, 2013. In June 2015, the Secretary of the Navy authorized the Commander, Marine Corps Installations National Capital Region, to apprehend and confine Appellant and to exercise general court-martial convening authority in Appellant's case.

Before entering his pleas, Appellant argued, apparently in a Rule for Courts-Martial (R.C.M.) 802 conference, that the maximum sentence that could be adjudged in his case did not include a punitive discharge. The military judge rejected that argument on the record.

As part of a plea agreement, Appellant agreed to plead guilty to (1) two specifications of indecent acts, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (Supp. II 2008); (2) one specification each of wrongfully possessing and wrongfully receiving and viewing child pornography; (3) one specification of attempting to employ and use a minor for producing child pornography;[2] and (4) two specifications of recording images of the private areas of his stepdaughter and wife. Article 120, 134, 80, 120c, UCMJ, 10 U.S.C. §§ 920, 934, 880, 920c (2012). He also agreed (1) to waive certain discrete motions and (2) that the convening authority could approve a punitive discharge if adjudged. In exchange, the convening authority agreed to withdraw certain specifications and suspend all confinement in excess of ninety-six months for the period of confinement plus twelve months.

During the plea inquiry, the military judge specifically asked Appellant: "Do you still wish to plead guilty in light of the fact that I believe a punitive discharge is authorized?" Appellant answered: "Yes, sir." The military judge accepted Appellant's guilty plea, found him guilty, and sentenced him

---

[2] This specification was merged with wrongfully possessing child pornography.

to a dishonorable discharge and confinement for nine years.[3] Pursuant to the plea agreement, the convening authority suspended all confinement in excess of ninety-six months and waived for six months the automatic forfeitures but otherwise approved the sentence. After considering the same issue upon which we granted review, the United States Navy-Marine Corps Court of Criminal Appeals (CCA) affirmed the findings and approved sentence. *United States v. Dinger*, 76 M.J. 552, 559 (N-M. Ct. Crim. App. 2017).

## II. The Law

The issue presented has its origins in the Naval Reserve Act of 1938, Pub. L. No. 75-732, 52 Stat. 1175 (1938). Title I of the statute—entitled "Dissolution of Existing Reserve and Organization of New Reserve"—abolished the Naval Reserve and Marine Corps Reserve as established under previous provisions of law and created a new Naval Reserve and a new Marine Corps Reserve. *Id.* § 1, 52 Stat. at 1175. It provided for the establishment of the Fleet Reserve to which enlisted men were transferred after retirement until they completed thirty years of service, at which time they could, at their own request, be transferred to the honorary retired list with pay. Persons so transferred:

> shall at all times be subject to the laws, regulations, and orders for the government of the Navy, and shall not be discharged therefrom prior to the expiration of their term of service, without their consent, except by sentence of a court martial, or, in the discretion of the Secretary of the Navy, when sentenced by civil authorities to confinement in a State or Federal penitentiary as a result of a conviction for a felony.

*Id.* § 6, 52 Stat. at 1176.

In Title II—entitled "Fleet Reserve"—the Act stated:

---

[3] None of the offenses of which he was convicted were subject to the mandatory minimum sentences made applicable to some offenses by the National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66, § 1705(a)(1), (2)(A), 127 Stat. 672, 959 (2013), or the National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 5301(a), § 5542(a), 130 Stat. 2000, 2919, 2967 (2016).

> For all purposes of this Act a complete enlistment
> during minority shall be counted as four years' ser-
> vice and any enlistment terminated within three
> months prior to the expiration of the term of such
> enlistment shall be counted as the full term of ser-
> vice for which enlisted; *Provided*, That all transfers
> from the Regular Navy to the Fleet Naval Reserve
> or to the Fleet Reserve, and all transfers of mem-
> bers of the Fleet Naval Reserve or the Fleet Re-
> serve to the retired list of the Regular Navy, hereto-
> fore or hereafter made by the Secretary of the
> Navy, shall be conclusive for all purposes, and all
> members so transferred shall, from the date of
> transfer, be entitled to pay and allowances, in ac-
> cordance with their ranks or ratings and length of
> service as determined by the Secretary of the Navy:
> *Provided further,* That the Secretary of the Navy,
> upon discovery of any error or omission in the ser-
> vice, rank, or rating for transfer or retirement, is
> authorized to correct the same and upon such cor-
> rection the person so transferred or retired shall be
> entitled to pay and allowances, in accordance with
> his rank or rating and length of service as deter-
> mined by the Secretary of the Navy.

*Id.* § 202, 52 Stat. at 1178.

Two years after enactment of the 1938 legislation, the
Comptroller General was asked to render an opinion on the
Act's effect on retainer pay for members of the Fleet Reserve
*recalled to active duty*, who had been reduced in grade by a
summary court-martial. 20 Comp. Gen. 76 (1940). The
Comptroller General ruled that "[i]n the absence of clear and
definite language a court-martial sentence imposing a re-
duction in grade or a forfeiture in pay will be interpreted as
applicable only to the period the man is on active duty." *Id.*
at 78.

Congress repealed the Naval Reserve Act of 1938 in
1952, except for Title II and parts of Title III. Armed Forces
Reserve Act of 1952, Pub. L. No. 82-476, § 803, 66 Stat. 505,
505 (1952). Thus, the provision in Title I, § 6, stating that
members of the Fleet Reserve and retirees were subject to
the laws and rules for the government of the Navy and could
not be discharged except by sentence of court-martial, was
deleted. The "unrepealed provisions of the Naval Reserve
Act of 1938, as amended," were to continue to apply to the

4

Marine Corps as well as the Navy. *Id.* § 803, 66 Stat. at 505. Therefore, Title II, § 202, of the 1938 act, concerning the conclusive nature of the transfer to the retired list, remained in effect.

In 1956, that provision, in a different form, was moved from Title 34, which at the time covered United States Navy matters, to Title 10 of the United States Code—Armed Forces—Chapter 571, entitled "Voluntary Retirement," covering Navy and Marine Corps personnel. Act of Aug. 10, 1956, ch. 571, 70A Stat. 1, 393 (1956). It currently reads:

> When a member of the naval service is transferred by the Secretary of the Navy—
>
> (1) to the Fleet Reserve;
>
> (2) to the Fleet Marine Corps Reserve;
>
> (3) from the Fleet Reserve to the retired list of the Regular Navy or the Retired Reserve; or
>
> (4) [f]rom the Fleet Marine Corps Reserve to the retired list of the Regular Marine Corps or the Retired Reserve;
>
> *the transfer is conclusive for all purposes.* Each member so transferred is entitled, when not on active duty, to retainer pay or retired pay from the date of transfer in accordance with his grade and number of years of creditable service as determined by the Secretary. The Secretary may correct any error or omission in his determination as to a member's grade and years of creditable service. When such a correction is made, the member is entitled, when not on active duty, to retainer pay or retired pay in accordance with his grade and number of years of creditable service, as corrected, from the date of transfer.

10 U.S.C. § 6332 (2012) (emphasis added).

This Court first considered that statute in *United States v. Allen*, a case in which a retired Navy E-8 was convicted, inter alia, of espionage on behalf of the Republic of the Philippines under both Article 106a, UCMJ, 10 U.S.C. § 906a, and 18 U.S.C. 793(d), as a crime or offense not capital under Article 134, 10 U.S.C. § 934. 33 M.J. 209, 210 (C.M.A. 1991). His offenses occurred while he was in retired status. *United States v. Allen*, 28 M.J. 610, 611 (N.M.C.M.R. 1989). The

5

court-martial sentenced him to confinement for eight years and to pay a fine of $10,000. 33 M.J. at 210. The convening authority approved the sentence and the appellant was administratively reduced to the lowest enlisted grade pursuant to Article 58a, UCMJ, 10 U.S.C. § 858a, which required that an enlisted person sentenced to confinement be reduced to the grade of E-1 unless the Secretary concerned had promulgated a regulation to the contrary. *Id.* at 210 & n.2. Apparently no such regulation was in effect in the Navy at the time of the appellant's court-martial.

As a result of his conviction for violating the Federal Espionage Act, 18 U.S.C. § 793(d), Allen's retirement pay became subject to forfeiture under 5 U.S.C. § 8312.[4] 33 M.J. at 215. Within one week of the announcement of the sentence, Navy officials took action to terminate his pay. *Id.* Allen argued that this action was premature as his conviction was not final, and that his pay grade could not be reduced by operation of law. *Id.* at 215–16. The Court of Military Appeals agreed that the Navy's termination of his retired pay was premature but proclaimed it was powerless to correct the pay issue under Article 67, UCMJ, 10 U.S.C. § 867. *Id.* at 215.

In analyzing whether Allen could be reduced by operation of law, the Court of Military Appeals relied heavily on a law review article that discussed the power of courts-martial over retirees and reservists:

> Professor Bishop concluded that forfeiture of pay (and by analogy reduction) was not necessary to satisfy the military interests in those cases. Bishop, *Court-Martial Jurisdiction Over Military-Civilian Hybrids: Retired Regulars, Reservists, and Discharged Prisoners*, 112 U. Pa. L. Rev. 317, 356–57 (1964). This is consistent with the long-standing proposition that a transfer of a servicemember to the retired list is conclusive in all aspects as to grade and rate of pay based on his years of service." 10 U.S.C. § 6332. Further, the Comptroller General

---

[4] This statute provides that individuals convicted of certain enumerated national security offenses under the UCMJ or federal civilian statutes, including espionage, may not be paid retired pay. 5 U.S.C. § 8312(a)–(c) (2012).

> has held that a member of the Fleet Reserve (legally, an almost identical status) who was court-martialed during a period of active duty and reduced in rating was to be paid at the higher rate once he returned to inactive duty. B–10520, 20 Comp. Gen. 76, 78 (1940); *see also* A–32599, 10 Comp. Gen. 37 (1930). From this we conclude that, because appellant was tried as a retired member, he could not be reduced for these offenses either by the court-martial or by operation of Article 58a.

*Id.* at 216. The Court set aside that portion of the convening authority's action administratively reducing the appellant to the lowest enlisted grade.[5] *Id.* at 217. Senior Judge Everett concurred but wanted to "qualify some of the majority's language," concluding that "the effects of our decision on the accused's military pay can best be determined in the United States Claims Court." *Id.* at 217 (Everett, S.J., concurring).

The following year, Senior Judge Everett retired and three new judges were appointed to an enhanced five-judge Court. The Court reviewed a case of an Army retiree. *United States v. Sloan*, 35 M.J. 4 (C.M.A. 1992). Based on his guilty pleas, the appellant had been convicted of carnal knowledge and indecent acts, all of which were committed before he retired from active duty. *Id.* at 5. He was sentenced to a bad-conduct discharge, confinement for three years, and reduction to E-1. *Id.* Pursuant to a plea agreement, the convening authority approved the sentence, except for the punitive discharge. *Id.* The Court specified the *Allen* issue. *Id.*

The Government asked the Court to overrule *Allen*. *Id.* at 11. It further contended that the statute on which *Allen* was based was limited to Navy retirees and that Congress had not enacted a similar statute for the Army. *Id.*

---

[5] Where the sentence is illegal, it would normally make sense to send the case back for a rehearing in which the court-martial would be on notice of the correct maximum punishment. But in *Allen*, the court-martial did not adjudge an illegal sentence. The sentence became illegal only because, in the absence of any regulation to the contrary, Article 58a required the reduction in grade. Thus, there was no reason to send it back for a new sentencing hearing.

In the opinion of the Court, Judge Wiss declined to discuss how the Navy statute could apply to Army personnel, other than to assert that the Court's decision in *Allen* did not depend solely upon 10 U.S.C. § 6332, as "there are other sound underpinnings of that decision." *Id.* (citing 5 U.S.C. § 8312). The Court concluded that *Allen* was not "feebly supported," and set aside the reduction in grade. *Id.* at 12

Chief Judge Sullivan concurred. He thought "that, as a matter of constitutional law and codal intent," retirees from the different services should be treated similarly, but was willing to reconsider *Allen* in a Navy case. *Id.* (Sullivan, C.J., concurring).

Judge Gierke, along with Judge Crawford, disagreed. First, *Allen* was based on a statute, 10 U.S.C. § 6332, that applied only to members of the naval service. *Id.* at 13 (Gierke, J., concurring in part and dissenting in part); *see id.* (Crawford, J., concurring with reservations and dissenting in part). "Furthermore, the *Allen* case involved an 'administrative' reduction pursuant to Article 58a, whereas appellant's case involves a reduction in grade imposed as punishment by a court-martial." *Id.* at 13 (Gierke, J., concurring in part and dissenting in part). Judge Gierke also criticized the majority's conclusion that 5 U.S.C. § 8312 supported its position by "protect[ing] retired pay from being diminished by a court-martial sentence," except for specified offenses. *Id.* at 14. Judges Gierke and Crawford correctly understood § 8312 to actually support the opposite conclusion: the statute "mandates termination of retired pay upon conviction of certain offenses, even if the sentence does not include dismissal or punitive discharge. Furthermore, termination of retired pay occurs upon conviction rather than, as under the UCMJ, upon completion of appellate review." *Id.* Judge Gierke also suggested that the Court revisit *Allen*. *Id.*

### III. Discussion

Whether, as a result of a court-martial conviction, Appellant is subject to a punitive discharge is a question of law we review de novo. *See United States v. Busch*, 75 M.J. 87, 92 (C.A.A.F. 2016).

The Government asserts that, by entering an unconditional guilty plea pursuant to a plea agreement that author-

ized the convening authority to approve a punitive discharge if adjudged, and specifically agreeing to plead guilty despite the military judge's ruling on the maximum punishment, Appellant voluntarily waived his right to appeal the dishonorable discharge. We disagree.

Although an accused may waive many of the most fundamental constitutional rights, he "does not waive his right to appeal a sentence that is unlawful because it exceeds the statutory maximum." *United States v. Guillen*, 561 F.3d 527, 531 (D.C. Cir. 2009); *see United States v. Lee*, 73 M.J. 166, 170 (C.A.A.F. 2014) (concluding there is no waiver "where on the face of the record the court had no power to … impose the sentence." (citation omitted) (internal quotation marks omitted)). If § 6332 prohibits retirees from being sentenced to a punitive discharge, Appellant's sentence would be unlawful.

Appellant contends that if § 6332 prohibited Allen and Sloan from being reduced in grade then it surely precludes him from being sentenced to a punitive discharge. The Government argues that § 6332 does not limit the punishments available at court-martial, which are established by Congress in the UCMJ and by the President under the authority granted to him in Article 56(a), UCMJ, 10 U.S.C. § 856(a). Our decisions in *Allen* and *Sloan* held otherwise. In those cases we concluded that, in light of § 6332, 5 U.S.C. § 8312, and 20 Comp. Gen. 76 (1940), a retiree "could not be reduced [in grade] either by the court-martial or by operation of Article 58a." *Allen*, 33 M.J. at 216; *see Sloan*, 35 M.J. at 11–12.

The Government asserts that *Allen* and *Sloan* are not applicable because those cases involved reductions in grade, not punitive discharges. If we disagree, the Government asks that we overrule those precedents. Our precedents have not discussed the affect of § 6332 on adjudged punitive discharges. But if the statute's language applies to reductions in grade, there is little reason to believe it does not apply to punitive discharges.

When asked to overrule one of our precedents, we analyze the matter under the doctrine of stare decisis. *United States v. Blanks*, 77 M.J. 239, 240–41 (C.A.A.F. 2018). Stare decisis is a principle of decision-making, under which a court

follows earlier judicial decisions when the same issue arises in other cases. *Payne v. Tennessee*, 501 U.S. 808, 828 (1991); *Black's Law Dictionary* 1626 (10th ed. 2014). "Although the doctrine of stare decisis is of fundamental importance to the rule of law, our precedents are not sacrosanct. We have overruled prior decisions where the necessity and propriety of doing so has been established." *Hurst v. Florida*, 136 S. Ct. 616, 623 (2016) (overruling *Hildwin v. Florida*, 490 U.S. 638 (1989), and *Spaziano v. Florida*, 468 U.S. 447 (1984) (alterations in original omitted) (citation omitted) (internal quotation marks omitted)). This is such a case.

In evaluating the application of stare decisis, we consider: "whether the prior decision is unworkable or poorly reasoned; any intervening events; the reasonable expectations of servicemembers; and the risk of undermining public confidence in the law." *United States v. Andrews*, __ M.J. __, __ (7) (C.A.A.F. 2018) (citation omitted) (internal quotation marks omitted).

Appellant argues that the language of 10 U.S.C. § 6332 "plainly states that a retiree's status on the retired list is 'conclusive for all purposes.' " "If a retiree's status is conclusive for *all* purposes, it follows that the court-martial lacks the legal authority to award punishments inconsistent with the retiree's status as it would contradict a federal statute."

Appellant seems to consider the word "conclusive," as used in § 6332 to mean permanent, final, or immutable. It does not. It means "[a]uthoritative; decisive; convincing." *Black's Law Dictionary* 351 (10th ed. 2014). Although § 6332, like the UCMJ, is part of Title 10, entitled "Armed Forces," it is not part of the integrated UCMJ, nor does it mention the UCMJ, courts-martial, or sentences adjudged at courts-martial. The plain language of the statute does not purport in any way to limit the authority of a court-martial to impose any authorized sentence.

The Constitution grants Congress the authority to establish the " 'regulations, procedures, and remedies related to military discipline.' " *Weiss v. United States*, 510 U.S. 163, 177 (1994) (quoting *Chappell v. Wallace*, 462 U.S. 296, 301 (1983)); U.S. Const. art. I, § 8, cl. 14. Congress exercised that authority by enacting the UCMJ " 'an integrated system of

investigation, trial, and appeal.'" *United States v. Muwwakkil*, 74 M.J. 187, 195 (C.A.A.F. 2015) (quoting *United States v. Dowty*, 48 M.J. 102, 106 (1998)).

"Retired members of a regular component of the armed forces who are entitled to pay" are subject to the UCMJ and, therefore, trial by court-martial. Article 2(a)(4), UCMJ, 10 U.S.C. § 802(a)(4) (2012); *Pearson v. Bloss,* 28 M.J. 376, 380 (C.M.A. 1989). A general court-martial "may adjudge any punishment not forbidden by" the UCMJ. Article 18(a), UCMJ, 10 U.S.C. § 818(a) (2012). "The punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense." Article 56(a), UCMJ. The President has decreed in R.C.M. 1003(a) that: "Subject to the limitations in this Manual, the punishments authorized in this rule may be adjudged in the case of any person found guilty of an offense by a court-martial." The President has not limited the punishments that may be adjudged against retirees.

*Allen* and *Sloan* are badly reasoned. The UCMJ is a self-contained statute that both defines criminal offenses and promulgates the procedures by which those offenses are to be prosecuted and adjudicated. In it, Congress specifically provided for the court-martial of "[r]etired members of a regular component of the armed forces who are entitled to pay." Article 2(a)(4), UCMJ. Congress also established mandatory sentences for some offenses (Article 106, UCMJ, 10 U.S.C. § 906 (2012)), and minimum punishments for others (Article 118(1)–(4), UCMJ, 10 U.S.C. § 918(1)–(4) (2012)), and authorized the President to set the maximum punishments for the remainder. Article 56, UCMJ. Had Congress intended to restrict the court-martial sentences adjudged in retiree cases, and particularly to abandon the principle of uniformity of treatment so essential to the UCMJ, one would expect it to have done so explicitly in either Article 2 or Article 56 of the UCMJ, not in some other statutory provision with no reference to its applicability to courts-martial. Congress has not done so.[6]

---

[6] This analysis is consistent with application of the canon of statutory interpretation that if there is a conflict between a general provision and a specific provision, the specific provision pre-

We have considered the other factors affecting our application of stare decisis and concluded that they do not save *Allen* and *Sloan* from being overruled. We hold that in § 6332 Congress did not prohibit a court-martial from sentencing a retiree to a punitive discharge or any other available punishment established by the President.

## IV. Conclusion

Insofar as *Allen* and *Sloan* support a different outcome, they are overruled. Although a court-martial is not prohibited from sentencing a retiree to a punitive discharge or any other authorized punishment, the collateral effect of such a sentence on a retiree is a different question that is not within the scope of our review. Congress saw fit to give jurisdiction over pay claims and related matters to other federal courts, and it is to them that such questions should be directed.

## V. Judgment

The judgment of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

---

vails. *Edmond v. United States*, 520 U.S. 651, 657 (1997); *United States v. Yarbrough*, 55 M.J. 353, 356 (C.A.A.F. 2001). The UCMJ, which authorizes the court-martial of retired military members and does not limit punishments to which a retiree may be sentenced, is the more specific provision.