[No. 15266-9-III.   Division Three.   October 7, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. WALTER ANTHONY MODEST, *Appellant*.

*Paul J. Wasson*, for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Lauri M. Boyd, Deputy*, for respondent.

SCHULTHEIS, A.C.J. — Several minor girls and a former wife accused Walter Anthony Modest of directing a prostitution ring while he was in the Yakima County Jail. He was convicted of five counts of second degree promotion of prostitution, three counts of accomplice to third degree rape of a child, three counts of accomplice to first degree promotion of prostitution and two counts of first degree promotion of prostitution. The trial court imposed an exceptional sentence upward. Mr. Modest contends on appeal the court erred in (1) admitting his wife's testimony and telephone records, (2) giving jury instructions with dates different from the bill of particulars, (3) finding the evidence was sufficient to support the verdict and (4) imposing the exceptional sentence. We affirm the judgment, but remand for resentencing.

Carol Westler married Mr. Modest in January 1994,

while Mr. Modest was incarcerated in the Yakima County Jail.[1] At that time, Ms. Modest was living with her four children and a 13-year-old girl, JC. According to Ms. Modest, Mr. Modest called from jail and directed her to have JC begin prostituting.[2] He told her where to send JC, what clothes the girl was to wear and what to charge for various sexual acts. He also told her to put the proceeds in his jail account.

In February 1994, 14-year-old runaway VP moved into Ms. Modest's home. Mr. Modest told his wife to make VP prostitute for room and board. He also told Ms. Modest to begin prostituting because VP and JC were not earning enough for his needs. Ms. Modest had the girls prostitute in the community as well as at labor camps in the area. They gave all their income to her. She sent Mr. Modest photographs so he could see how they were dressed for prostitution. A 14-year-old neighbor, SK, was also enlisted.

Ms. Modest, JC and VP all testified that Mr. Modest threatened them to keep them prostituting and directed punishment over the telephone. When Ms. Modest resisted prostituting, he told her he would wait until he was released from custody in August 1994 and would then torture and kill her and her children. She also claimed he threatened to cut off her body parts and put them in a wood chipper. VP testified he threatened to punish her by performing anal sex on her after he was released. He also ordered Ms. Modest to perform this act on VP with a sexual device while he listened on the telephone. Occasionally VP was ordered to perform the same punishment on Ms. Modest. Although JC was never explicitly threatened with violence (because, she explained, she always did what he said), Mr. Modest indicated she would be kicked out if she did not meet his income quota. She also had been warned he was violent and she thought he might beat her after he got out of jail.

---

[1] Mr. Modest never actually lived with Ms. Modest while they were married.

[2] JC testified that Ms. Modest first asked her to prostitute.

In July 1994, Ms. Modest was arrested and charged with 91 counts of promoting prostitution, rape of a child and accomplice to rape of a child. The State simultaneously obtained a warrant to search Mr. Modest's jail cell. The original information, filed July 13, 1994, charged Mr. Modest with three counts of first degree promoting prostitution, RCW 9A.88.070(1)(a). An amended information filed in September 1994 charged him with seven counts of first degree promoting prostitution and three counts of accomplice to third degree rape of a child, RCW 9A.44.079; 9A.08.020. He moved for a bill of particulars in October, requesting the names of the alleged complaining witnesses and more specific dates. This information was provided.

In November 1994, Ms. Modest pleaded guilty to 10 counts of first degree promoting prostitution. The 81 other charges were dismissed. She agreed to assist in prosecuting Mr. Modest, his brother Mikal and another man. Mr. Modest then moved to prohibit examination of his wife and to return all letters he had sent to her, arguing all was privileged information. After an evidentiary hearing in March 1995, Judge Hahn ruled that the doctrines of marital privilege and spousal immunity did not preclude admission of Ms. Modest's testimony or the letters. Judge Hahn recused herself from the case before ruling on Mr. Modest's motion for reconsideration. Newly assigned Judge Leavitt denied the motion, finding that two exceptions to the privilege applied: crimes by a guardian against a child and crimes by one spouse against the other. RCW 5.60.060(1).

In July 1995, the State filed a third amended information and Mr. Modest pleaded guilty to five counts of second degree promoting prostitution. As agreed by the parties, a corrected third amended information was to be filed reflecting the change in the charges. At the time this final information was filed, about one week before trial, Mr. Modest's counsel asked if the specifics on the bill of particulars were still the same as to each count. She was assured they were.

At trial, Ms. Modest, VP, JC and other witnesses testified that Mr. Modest directed the prostitution ring that was run from Ms. Modest's home. One of his cellmates testified he observed Mr. Modest discuss on the telephone the prices of sexual services and deposits for his jail account. The defense presented the testimony of five inmates and seven security guards who stated they had not observed Mr. Modest use the telephone immoderately or heard him speak angrily or in a sexual manner in telephone conversations. After the defense rested, the State rebutted with a telephone bill that showed numerous collect calls from Mr. Modest's cell area to Ms. Modest's residence in May 1994.

The jury instructions specified dates contained in the corrected third amended information. The jury returned a guilty verdict on all charges. Although the court imposed standard range sentences for each charge, it ran several of them consecutively to reach an exceptional sentence of 360 months. This appeal followed.

Mr. Modest first assigns error to admission of his wife's testimony and telephone records from May 1994. He contends his wife's testimony violated the marital privilege and argues the telephone records were inadmissible because they are hearsay and irrelevant. Admission of either evidence was prejudicial, he asserts, requiring reversal of the verdict and dismissal.

■ The marital privilege is contained in RCW 5.60.060(1), which provides that neither a husband nor a wife can testify for or against the other spouse without the spouse's consent.[3] *State v. Burden*, 120 Wn.2d 371, 373-74, 841 P.2d 758 (1992). Because Ms. Modest was not married to Mr. Modest at the time of trial, this provision does not preclude her testimony. Even a former spouse, however, cannot be examined regarding any confidential communication made by one to the other during the mar-

[3]Although the original rationale for the privilege was to foster domestic harmony, this rationale has been criticized in modern times. *See State v. Burden*, 120 Wn.2d 371, 375-76, 841 P.2d 758 (1992), and cases and articles cited therein.

riage. *Burden*, 120 Wn.2d at 374; *State v. Webb*, 64 Wn. App. 480, 486, 824 P.2d 1257, *review denied*, 119 Wn.2d 1015 (1992).

Recognizing that Ms. Modest revealed confidential information in her testimony, we ask next whether the evidence was otherwise admissible. Two exceptions to the marital privilege are relevant to this case: (1) an action for a crime committed by one spouse against the other; and (2) an action for a crime committed by a spouse against any child for whom the spouse is the parent or guardian. RCW 5.60.060(1); *State v. Thornton*, 119 Wn.2d 578, 580, 835 P.2d 216 (1992); *State v. Waleczek*, 90 Wn.2d 746, 749, 585 P.2d 797 (1978). The trial court applied the first exception to permit Ms. Modest to recount statements Mr. Modest made to her regarding her own acts of prostitution during their marriage.[4] It applied the second exception to allow her to testify regarding the prostitution of the teenage girls.

Under the plain language of the statute, Ms. Modest was allowed to testify regarding confidential communications from Mr. Modest that pertain to the crimes he allegedly committed against her. He was charged with two counts of first degree promoting his wife's prostitution by threat or force, RCW 9A.88.070(1)(a). As far as her testimony pertained to his criminal actions against her, it was clearly admissible under RCW 5.60.060(1).

The court's decision to allow her to testify regarding Mr. Modest's crimes against the teenage prostitutes, however, is more problematic. Mr. Modest contends he could never have acted as a guardian while he was incarcerated. He argues the evidence does not support application of the guardianship exception to the marital privilege.

■■ Generally, the guardianship exception applies

---

[4] Judge Hahn's reasoning is not contained in the order denying Mr. Modest's motion for exclusion. The judge's explanatory letter to the parties was sealed after she recused herself, but is contained in the record. We assume that in denying the motion to reconsider, Judge Leavitt adopted Judge Hahn's reasoning.

when any spouse acts in loco parentis, meaning when he or she assumes the parental character or discharges parental duties, even if for a very short time. *Waleczek*, 90 Wn.2d at 752-53; *State v. Wood*, 52 Wn. App. 159, 162-63, 758 P.2d 530 (1988). The determination of who qualifies as a guardian depends on the facts and circumstances of each case. *Wood*, 52 Wn. App. at 163. We must also take into consideration the paramount legislative intent to insure effective prosecutions for sexual crimes against children. *State v. Sanders*, 66 Wn. App. 878, 884, 833 P.2d 452 (1992), *review denied*, 120 Wn.2d 1027 (1993); *Wood*, 52 Wn. App. at 164. In light of this overriding concern, we liberally interpret the word "guardian" to punish child abusers and protect children from further mistreatment. *State v. Lounsbery*, 74 Wn.2d 659, 663, 445 P.2d 1017 (1968); *Wood*, 52 Wn. App. at 164.

Evidence at trial showed that Mr. Modest approved or disapproved any teenagers who moved into his wife's home. He directed them to pay his wife for the privilege of living there, requested their attendance at jail visiting hours or demanded pictures of them so he could judge their appearance, ordered punishment performed while he listened over the telephone, and generally required them to follow stringent rules while living with his wife. Most of the teenage prostitutes were runaways who relied on the "benevolence" of the Modests for a place to live. Any liberal construction of the term "guardian" supports application of the guardianship exception to the marital privilege in this case. *See Waleczek*, 90 Wn.2d at 753 (guardianship found when couple allowed child to sleep in their house and voluntarily undertook duties normally characterized as parental). Consequently, the court properly allowed Ms. Modest to testify regarding conversations with her husband about the teenagers.

Mr. Modest's argument that the May 1994 telephone bill is hearsay and irrelevant is also without merit. The bill was entered on rebuttal only after defense witnesses testified that they had not seen Mr. Modest use

the jail telephone frequently. Hearsay evidence is any assertion offered in evidence to prove the truth of the matter asserted. ER 801. Accordingly, any spoken word, writing or nonverbal conduct that is not intended to be assertive is not hearsay. *In re Dependency of Penelope B.*, 104 Wn.2d 643, 652, 709 P.2d 1185 (1985); *State v. Collins*, 76 Wn. App. 496, 498, 886 P.2d 243, *review denied*, 126 Wn.2d 1016 (1995). Clearly a telephone bill is not an assertive statement and is not excludable as hearsay.

■ The admissibility of nonassertive statements as circumstantial evidence of a fact in issue is governed by principles of relevance rather than hearsay. *Penelope B.*, 104 Wn.2d at 652-53.[5] Because the charges cover criminal activities from January to June 1994, the telephone record showing that Mr. Modest made numerous telephone calls to his wife's home during that period is relevant as rebuttal evidence. Although the statement purports to show the telephone bill of a "Lester Jones," Ms. Modest testified that she used the alias because she had poor credit with the telephone company.

Mr. Modest next contends the court erred in giving jury instructions that did not conform to the bill of particulars provided to the defense before trial. He argues he relied on the dates contained in the bill of particulars when preparing his cross-examination of witnesses and proposed jury instructions. Since the court's jury instructions contained different dates in five of the counts, he contends, he was deprived of his Sixth Amendment rights to due process and notice of the charges.

■■ There is no factual basis for this argument. The jury instructions in question, numbers 13 to 17, contain the same time frames and victims found in the bill of particulars attached to Appellant's Brief at A-5 to A-6 and found in the record at Clerk's Papers 633-34. An earlier

[5]As noted in *Penelope B.*, "If tulips bloom, they are not making assertions that it is spring; but the testimony of a witness that tulips were observed to be blooming may be offered as circumstantial evidence of spring." 104 Wn.2d at 653.

bill of particulars, found at A-4, was superseded by the later one. The jury was properly instructed to find Mr. Modest guilty on the same theory and under the same facts as those alleged in the bill of particulars. *State v. Peerson*, 62 Wn. App. 755, 768-69, 816 P.2d 43, *review denied*, 118 Wn.2d 1012 (1992). The court's instructions accurately state the law and are supported by substantial evidence in the record. *State v. Edwards*, 84 Wn. App. 5, 14, 924 P.2d 397 (1996), *review denied*, 131 Wn.2d 1016 (1997).

Mr. Modest also contends the evidence is insufficient to support his guilty verdict. In particular, he argues it was physically and legally impossible for him to be an accomplice to rape of a child or promoting prostitution while he was in jail. He contends he should have been charged under the criminal conspiracy statute, RCW 9A.28.040, rather than under the accomplice liability statute, RCW 9A.08.020(3).

■ The standard of review for challenging the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Bright*, 129 Wn.2d 257, 266 n.30, 916 P.2d 922 (1996); *State v. Robinson*, 73 Wn. App. 851, 855, 872 P.2d 43 (1994). Accomplice liability is established with proof that the defendant, with knowledge that it will promote or facilitate commission of the crime, either (1) "solicits, commands, encourages, or requests [another] person to commit it," or (2) "aids or agrees to aid such other person in planning or committing it." RCW 9A.08.020(3)(a)(i), (ii). Unlike the criminal conspiracy statute, found in RCW 9A.28.040, accomplice liability requires only a state of knowledge rather than intent, and requires a completed crime rather than merely a substantial step toward commission of the crime. *State v. Gocken*, 127 Wn.2d 95, 108-09, 896 P.2d 1267 (1995).

■ While it may be that one who is present at the scene of a crime must be ready to assist in its commission

in order to be an "aider" under RCW 9A.08.020(3)(a)(ii),[6] it is also true that one may promote commission of a crime without being physically present at all. The plain language of the statute provides that a defendant is an accomplice if he or she knowingly participates in the crime by soliciting, commanding or encouraging another to commit it. RCW 9A.08.020(3)(a)(i). Numerous witnesses testified at trial that Mr. Modest frequently called on the telephone and directed the running of the prostitution ring. He ordered the teenage prostitutes to go to the mall to recruit more young women, he directed them to charge certain fees for certain acts, he told Ms. Modest how much money to deposit in his jail account from the monthly quota and he directed sexual abuse punishment. This evidence is more than sufficient to convince any rational juror beyond a reasonable doubt that he was an accomplice in the promoting of prostitution and child rape.

In his final argument, Mr. Modest contends his exceptional sentence is unsupported by the facts and case law. The trial court imposed standard range sentences for each conviction[7] but ran the concurrent sentences for the second degree promoting prostitution charges, accomplice to third degree rape of a child charges, accomplice to first degree promoting prostitution charges and first degree promoting prostitution charges consecutively. The resulting sentence is 360 months.

Consecutive sentences may be imposed only under the exceptional sentence standards of RCW 9.94A.120 and RCW 9.94A.390. RCW 9.94A.400(1); *State v. Langford*, 67 Wn. App. 572, 587, 837 P.2d 1037 (1992),

---

[6]*State v. Rotunno*, 95 Wn.2d 931, 933-34, 631 P.2d 951 (1981).

[7]Mr. Modest received 60 months concurrent for the five counts of second degree promoting prostitution, 60 months concurrent for the three counts of accomplice to third degree rape of a child, 120 months concurrent for the three counts of accomplice to first degree promoting prostitution, and 120 months concurrent for the two counts of first degree promoting prostitution. These sentences are well within the standard range for an offender score of 15 (based on the 12 other current charges and 3 prior convictions). RCW 9.94A.310, .320, .360, .400.

*review denied*, 121 Wn.2d 1007, *cert. denied*, 510 U.S. 838 (1993). These provisions allow the imposition of an exceptional sentence when there are "substantial and compelling reasons justifying" a sentence outside the standard range. RCW 9.94A.120(2). We review an exceptional sentence to determine whether (1) the reasons supplied by the sentencing court are supported by the record; (2) those reasons substantially and compellingly justify departure from the standard range; and (3) under a reasonable person standard, the court abused its discretion by imposing a sentence clearly excessive or too lenient. RCW 9.94A.210(4); *State v. Flake*, 76 Wn. App. 174, 182, 883 P.2d 341 (1994).

Here, the court relied on six reasons for imposing consecutive sentences: (1) Mr. Modest's crimes were "despicable," (2) several victims were juvenile females, (3) several victims were adult females, (4) many juvenile victims were runaways with problem families, (5) there were multiple victims, and (6) the victims engaged in multiple acts of prostitution. The record substantially supports reasons two through six. Reason one, however, is actually an opinion rather than a fact.[8] As for their validity as aggravating factors, the facts that the victims were either juvenile runaways or adult females are not substantial and compelling reasons to depart from the guidelines. *State v. Fisher*, 108 Wn.2d 419, 424-25, 739 P.2d 683 (1987) (extreme youth of victims relates to aggravating factor of particular vulnerability). While there were multiple victims, the State filed charges for each victim. Consequently, the court may not rely on the multiple victims as an aggravating factor. *Flake*, 76 Wn. App. at 184; *State v. Pittman*, 54 Wn. App. 58, 62-63, 772 P.2d 516 (1989).

The only finding that will support the exceptional

---

[8]An offense that is "more onerous than that contemplated by the Legislature" may support an exceptional sentence upward. *State v. Weaver*, 46 Wn. App. 35, 43, 729 P.2d 64 (1986), *review denied*, 107 Wn.2d 1031 (1987). The court made no such finding here, and the record does not support a finding that the promotion of prostitution and the child rapes were more onerous than would normally be contemplated.

sentence here is the fact that the victims engaged in multiple incidents of prostitution. Most prostitute witnesses testified that they engaged in far more acts of prostitution than were reflected in the charges. Since these additional incidents were not considered in setting the presumptive range, they may be considered aggravating factors. *State v. Brown*, 55 Wn. App. 738, 756, 780 P.2d 880 (1989), *review denied*, 114 Wn.2d 1014 (1990).

■■■■■ The State raises an additional reason to support the exceptional sentence, a reason that is not included in the findings below but that is clearly supported by the record. In reconsidering this sentence on remand, the court may note that the multiple current and prior convictions result in punishment for 9 of the 15 current offenses. (The Sentencing Reform Act of 1981 makes no provision for an offender score greater than nine. RCW 9.94A.310.) A sentencing court may impose an exceptional sentence upward when the multiple offense policy results in a sentence that is clearly too lenient. *State v. Coats*, 84 Wn. App. 623, 628, 929 P.2d 507, *review denied*, 132 Wn.2d 1003 (1997). Otherwise, a defendant's multiple current offenses and high offender score will result in some crimes going unpunished. *State v. Stephens*, 116 Wn.2d 238, 246, 803 P.2d 319 (1991). "Public policy and the Sentencing Reform Act require full punishment for each offense." *Coats*, 84 Wn. App. at 628 (citing *Stephens*, 116 Wn.2d at 244-45).

■■ In light of the fact that five of the six aggravating factors must be rejected as a matter of law, we remand this case to the trial court for resentencing. *State v. Gaines*, 122 Wn.2d 502, 512, 859 P.2d 36 (1993) (remand necessary when the appellate court is not confident the trial court would impose the same sentence on reconsideration).

Judgment affirmed. Remanded for resentencing.

THOMPSON and BROWN, JJ., concur.

Review denied at 134 Wn.2d 1017 (1998).