## UNITED STATES

v.

**Staff Sergeant Michael R. McELHANEY, United States Air Force.**

ACM 32522.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 11 July 1996.

Decided 21 June 1999.

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt, Lieutenant Colonel Kim L. Sheffield, Major Margo Stone Newton, Major Kevin P. Koehler, and Major Gerald R. Bruce.

Appellate Counsel for the United States: Colonel Brenda J. Hollis, Colonel Michael J. Breslin, and Captain Steven D. Dubriske.

Before SNYDER, Chief Judge, SENANDER, and SCHLEGEL, Appellate Military Judges.

## OPINION OF THE COURT

SCHLEGEL, Judge:

The appellant was convicted, contrary to his pleas, by a general court-martial of an attempt to commit rape, an attempt to commit carnal knowledge, carnal knowledge with a female under 12 years of age, carnal knowledge, sodomy with a child under 16 years of age, and four specifications of indecent acts with a female under 16 years of age in violation of Articles 80, 120, 125, and 134, UCMJ, 10 U.S.C. §§ 880, 920, 925, and 934. He was sentenced to a dishonorable discharge, confinement for 20 years, and reduction to E–1. The convening authority approved the findings and sentence but reduced the period of confinement to 15 years. The appellant's original assignment of errors, submitted on his behalf by counsel, raised seven errors for our consideration. Subsequently, pursuant

to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), the appellant submitted 11 additional matters for our review. We find the appellant is entitled to relief for the *ex post facto* application of Articles 57(a) and 58b in his case. We resolve the remainder of his assigned errors and *Grostefon* submissions against him.

## I. Background

While stationed at Clark Air Base (AB), Philippines, in 1986, the appellant met and began dating his future wife, a local national who was working in his squadron. The victim, VCR, the niece of his future wife, was seven years old and living with her. When the appellant and his future wife began living together in 1987, VCR also lived with them at the appellant's off-base residence. The appellant and his wife were married in December 1987. In August 1988, the appellant was transferred from Clark AB to Randolph Air Force Base (AFB), Texas.

After the appellant left the Philippines, he began writing letters and sending cards to VCR in which he expressed his romantic love for her. He returned to the Philippines in April 1991, February 1992, and July 1994. On each occasion, he saw VCR. In August 1994, the appellant's wife and VCR's family discovered the true nature of their relationship.

## II. Statute of Limitations

The charge and specification of rape, one specification of sodomy, and one specification of indecent acts with VCR were alleged to have occurred between 1 August 1987 and 31 August 1988. The summary court-martial authority receipted for the charges on 2 February 1996. At trial, the appellant moved to dismiss these offenses based upon the statute of limitations. Article 43, UCMJ, 10 U.S.C. § 843. The military judge ruled that the prosecution for rape was not barred because it was an offense punishable by death. In addition, the military judge ruled that the specifications alleging sodomy and indecent acts between 1987 and 1988 were not barred because a statute of limitations for offenses against children, found at 18 U.S.C. § 3283, was applicable to military members.

At the conclusion of the case on the merits, the military judge provided the prosecution and defense with proposed instructions. On the charge and specification alleging rape, these instructions included the lesser-included offenses of attempted rape, carnal knowledge, and attempted carnal knowledge. The appellant did not object to these instructions. The military judge did not inquire whether the appellant waived the statute of limitations for the lesser-included offenses. The members convicted the appellant of attempted rape and indecent acts. He was acquitted of the one specification alleging sodomy.

The appellant contends the military judge erred in his interpretation of Article 43, UCMJ, on the charge and specification alleging rape because it was not referred as a capital offense. In addition, he argues the military judge erred in applying 18 U.S.C. § 3283. The government responds that the military judge correctly interpreted Article 43, UCMJ, for the offense of rape and argues that we should sustain the appellant's conviction for attempted rape because the appellant waived the statute of limitations for the lesser-included offense. The government agrees with the appellant that the military judge erred in applying the statute of limitations found at 18 U.S.C. § 3283 in his trial. We are not bound by the government's concession on this issue. *United States v. Savage,* 50 M.J. 244 (1999) (Crawford, J. concurring) (citing *United States v. Emmons,* 31 M.J. 108, 110–111 (C.M.A.1990); *United States v. Hand,* 11 M.J. 321 (C.M.A.1981); *United States v. Wille,* 26 C.M.R. 403 (C.M.A.1958)).

The application of a statute of limitation can be a mixed question of law and fact. *United States v. Frazier,* 45 C.M.R. 218 (C.M.A.1972). This case requires us to interpret Article 43, UCMJ, and decide whether 18 U.S.C. § 3283 applies to the appellant's crimes against VCR committed in 1987 and 1988. The facts surrounding these questions are not in dispute. Therefore, we will review the military judge's decisions to interpret and apply the law on both of these questions *de novo.* S. Childress and M. Davis, *Federal Standards of Review* § 2.21 (2nd ed.1992).

## a. Rape

The Court of Appeals for the Armed Forces has determined that a prosecution for rape, even when referred as non-capital, is not barred by Article 43, UCMJ, because it is an offense punishable by death. *Willenbring v. Neurauter,* 48 M.J. 152 (1998). However, this appellant was convicted of attempted rape, an offense that is not punishable by death and, therefore, subject to a 5-year statute of limitation. Article 43(b)(1), UCMJ.

## b. Attempted Rape

The government's position is that the appellant waived his right to assert the statute of limitations for attempted rape by failing to object when the military judge instructed the members on the lesser-included offenses. Rule for Courts–Martial (R.C.M.) 907(b)(2)(B) provides the statute of limitations is a waivable ground for dismissal "provided that, if it appears that the accused is unaware of the right to assert the statute of limitations in bar of trial, the military judge shall inform the accused of this right."

■ In *United States v. Salter,* 20 M.J. 116–17 (C.M.A.1985), the Court of Military Appeals, held that an accused must be advised in open court whenever it appears that the statute of limitations has run against an offense and that the doctrine of waiver will not apply if the record does not demonstrate the accused was aware of the statute of limitations. We see no reason or authority to impose a different rule for lesser-included offenses. R.C.M. 920(e)(2). A statute of limitation must be knowingly waived, not accidentally forfeited. *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Furthermore, we will not presume the appellant was aware of the applicability of Article 43, UCMJ, to the lesser-included offense of attempted rape merely because he asserted it as to other charged specifications.

■ The military judge had a duty to advise the appellant of the applicability of Article 43, UCMJ, to the lesser-included offenses and the record of trial establishes he did not. As a result, we are not convinced the appel-lant knew of this right. *United States v. Wiedemann,* 36 C.M.R. 521 (C.M.A.1966); *United States v. Troxell,* 30 C.M.R. 6 (C.M.A. 1960). Under these circumstances, we find the appellant did not knowingly waive the statute of limitations with respect to the lesser-included offenses.

The government also argues that the instructions on the lesser-included offenses benefited the appellant and, therefore, he should be estopped from arguing that the shorter statute of limitation applies. This ignores the military judge's responsibility to insure an accused makes a knowing waiver of a bar to prosecution. It is entirely possible that the appellant believed the military judge's ruling on 18 U.S.C. § 3283 also encompassed the lesser-included offenses to the charged rape.

## c. Applicability of 18 U.S.C. § 3283

■ The appellant argues the statute of limitations found at 18 U.S.C. § 3283 does not apply to members of the armed forces because the Uniform Code of Military Justice establishes a separate system for military justice that is different from the criminal justice system in the District Courts of the United States. According to the appellant, Article 43, UCMJ, is the only statute of limitations that can be employed in courts-martial. The appellant also argues the use of 18 U.S.C. § 3283 in his case amounts to a violation of the *Ex Post Facto* Clause of the Constitution, U.S. Const. art. I, § 9, cl. 3, because the 5–year statute of limitations under Article 43, UCMJ, had already run before the charges were received by the summary court-martial convening authority.

On 29 November 1990, the Congress enacted the Crime Control Act of 1990. Pub.L. No. 101–647, 104 Stat. 4789. It contains 37 separate titles, many of which are designated as "Acts" within the legislation. One of these acts is titled, the Victims of Child Abuse Act of 1990. *Id.* at Title II, § 201 *et seq.,* 104 Stat. 4792 (1990) (codified at 42 U.S.C. § 13001). The Victims of Child Abuse Act of 1990, hereinafter referred to as the VCAA, is a comprehensive effort by Congress to address the difficult problem of child physical and sexual abuse. Congress found

that many states had programs that increased the reporting of offenses against children, reduced the trauma to child victims, and improved the successful prosecution of offenders. According to the legislative history, Congress believed the VCAA was necessary because the criminal justice system was not suited to the special needs of child victims and witnesses. H.R.Rep. No. 101–681 at 165–6 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6571–72.

> While there are a limited but rising number of child abuse cases tried in the federal courts, many states have adopted innovative procedures that far outpaced Federal law, leaving those children who do enter the Federal system (through military bases, Indian reservations, and from other federal lands and facilities) inadequately protected....

*Id.* at 166, 6572.

The scope and impact of the VCAA is broad. It provides for grants at the federal, state, and local level for training to improve the quality of child abuse prosecutions and multidisciplinary assistance to child victims and witnesses. The VCAA also provides "rights" for a child victim or witness to include alternatives to live in-court testimony and privacy protections. It imposes child abuse reporting requirements on specified professionals and activities on federal land or in federally operated or contracted facilities.[1] Furthermore, this same section imposes a criminal penalty for failure to report suspected cases of child abuse. It also mandates that each agency of the federal government and every facility operated by the federal government that hires workers who provide child care services, including contracted facilities, conduct criminal background checks on employees.[2] The Department of Defense has implemented those provisions of the VCAA.[3]

Subtitle D, § 225, of the VCAA, codified at 18 U.S.C. § 3509, is the section of the VCAA

that specifies the rights of child victims and witnesses. Most of these rights involve procedures to make it less intimidating for a child to participate in a trial. However, 18 U.S.C. § 3509(k) provided, in part, *"No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years."* (Emphasis added). In promulgating this exception to the general 5–year statute of limitations, Congress did not amend 18 U.S.C. § 3282 or 10 U.S.C. § 843.

On 13 September 1994, Congress amended 18 U.S.C. § 3509(k) by eliminating the cited language. Pub.L. No. 103–322, 108 Stat. 2149, title XXXIII, § 330018(b). This same legislation provided for a wholesale amendment of 18 U.S.C. § 3283 that had been titled "Customs and Slave Trade Violations." The title of the section was changed to "Child Abuse Offenses" and all the previous language in the section was dropped and replaced with the language eliminated from 18 U.S.C. § 3509(k). *Id.* In addition, the legislation provided that the amendment of 18 U.S.C. § 3283 was effective on 29 November 1990.

In *United States v. Longstreath*, 42 M.J. 806 (N.M.Ct.Crim.App.1995), *aff'd*, 45 M.J. 366 (1996), our Navy–Marine Corps brethren held that the provisions of the VCAA, including the use of two-way closed circuit television and videotaped depositions in proceedings involving offenses against children, applied in courts-martial. *Id.* at 815. On appeal, the Court of Appeals for the Armed Forces, affirmed the lower court, but declined to address the question of whether the provisions of 18 U.S.C. § 3509 applied to courts-martial. *United States v. Longstreath*, 45 M.J. 366 (1996). Instead, the Court found that the use of a one-way closed circuit television system at the appellant's

---

1. § 226, Child Abuse Reporting, codified at 42 U.S.C. § 13031.

2. § 231, Child Care Worker Background Checks, codified at 42 U.S.C. § 13041.

3. Department of Defense Instruction (DODI) 1402.1, Criminal History Background Checks on Individuals in Child Care Services (January 19, 1993); Department of Defense Instruction (DODI) 6060.2, Child Development Programs (January 19, 1993); Department of Defense Directive (DODD) 6400.1, Family Advocacy Program (June 23, 1992).

trial for the testimony of two child victims did not violate the VCAA, the Sixth Amendment, or *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). The Court, while noting that certain portions of the VCAA specifically referred to the Fed. R.Evid. and Fed.R.Crim.P., acknowledged the legislative history reflected a general congressional intent that the VCAA apply to children who enter the federal system through military bases. *Longstreath*, 45 M.J. at 372.

Recently, in *United States v. Dowty*, 48 M.J. 102 (1998), the Court held that the tolling provisions of the Right to Financial Privacy Act (RFPA), 12 U.S.C. § 3419, applied to Article 43, UCMJ, when a member of the armed forces invokes the RFPA to block government access to their financial records. The case involved an officer in the naval reserve who was accused of submitting fraudulent claims for services to the Navy on behalf of his privately owned company. During the investigation, after the government issued a subpoena under the RFPA to obtain his bank records, the officer challenged the subpoena in federal court in accordance with his rights under the RFPA. This challenge was rejected by the district court eight months later. Eventually, the accused was charged and brought to trial before a general court-martial. At trial, he moved to dismiss 12 specifications by asserting the 5-year statute of limitations in Article 43(b)(1), UCMJ, as a bar to prosecution. The government argued that prosecution on the 12 specifications was not barred because the eight months lost while their subpoena was being contested in federal court should be excluded pursuant to the RFPA tolling provision.[4] The military judge ruled for the accused and the government appealed under Article 62, UCMJ, 10 U.S.C. § 862. The Navy–Marine Court of Criminal Appeals reversed the trial judge. *United States v. Dowty*, 46 M.J. 845 (N.M.Ct.Crim.App.1997). The Court granted a petition for review. *United States v. Dow-*

*ty*, 48 M.J. 328, No. 97–6001/NA (Daily Journal Sep 10, 1997).

*Dowty* provides military justice practitioners with a historical perspective of the military discipline system and how it is distinct and separate from criminal proceedings in federal district courts. *Dowty*, 48 M.J. at 106. Nevertheless, the Court acknowledged that on rare occasions, the military justice system has applied statutes outside of the UCMJ, like the All Writs Act, 28 U.S.C. § 1651(a). In determining if a comprehensive law affects a prior statute, the Court said the question to be resolved is whether the new law can be read to modify the prior law. *Id.* at 109. The resolution of this question depends on a variety of factors, including: "(1) whether the subsequent statute applies in general to circumstances governed by the prior statute; (2) whether failure to apply the challenged portion of the subsequent statute would be inconsistent with the statutory framework of the subsequent statute; and (3) whether application of the subsequent statute would be inconsistent with the statutory framework of the prior statute." *Id.* However, a critical factor for the Court was the plain language of the tolling provision and the fact that "service members are authorized to use the shield of the RFPA to challenge subpoenas related to military investigations." *Id.* at 110.

The VCAA was enacted to protect children who are victims of physical or sexual abuse. It confers no substantive benefit, like the RFPA, on individuals who are being investigated or charged with committing child abuse. In fact, failure to comply with the VCAA's child abuse reporting requirement or mandatory criminal background checks could subject a military member to criminal penalties. The legislative history of the VCAA reveals that Congress did not intend to expand the jurisdiction of the federal government in child abuse cases. Instead, Congress wanted to help sustain worthwhile state initiatives in the area of child abuse and incorporate innovative state programs at the

---

4. The relevant provision of that statute reads:

 If any individual files a motion or application under this chapter which has the effect of delaying the access of a Government authority to financial records pertaining to such individual, any applicable statute of limitations shall be deemed to be tolled for the period extending from the date such motion or application was filed until the date upon which the motion or application is decided.

826

federal level for the prevention, reporting, and prosecution of child abusers, including children who enter the federal system from military bases. The purpose of these protections was to shield children from the ravages of a criminal system designed for adults.

The statute of limitations originally in 18 U.S.C. § 3509(k) simply expanded the amenability to prosecution of an individual who physically or sexually abused a child. There is nothing unconstitutional, unfair, or improper with this approach. The law has always viewed statutes of limitation as an act of grace by the sovereign.

Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost.

*Chase Securities Corporation v. Donaldson et al.*, 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) (citing *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349, 64 S.Ct. 582, 88 L.Ed. 788 (1944)). The Supreme Court has refused to characterize the claim of a bar to prosecution by virtue of a statute of limitations as a "fundamental" or "natural" right of an individual. *Id.* As a result, the changing of a statute of limitation has never been viewed as a violation of due process. *Id.* at 315–16, 65 S.Ct. 1137 (citing *Campbell v. Holt*, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885)).

What is the relationship between Article 43, UCMJ, and the plain language of 18 U.S.C. § 3283?

Congress is not required to use specific language when enacting new legislation that has the effect of modifying prior legislation, including prior legislation that appears on its face to admit of limited or no exceptions. There is no legal requirement that Congress, in establishing a law with comprehensive effect, specifically amend all previously enacted legislation that it intends to affect.

*Dowty*, 48 M.J. at 109. In *Dowty*, the Court was confronted with a statute that could be used as a shield and a sword if the tolling provision of the statute was not applied. Although the VCAA confers no similar benefit, failure to apply the statute of limitations would provide a service member facing a federal conviction in a court-martial with an unfair advantage over a civilian confronting the same prospect in a federal district court. We do not believe this was the intent of the Congress when they specifically recognized the need to afford the protections of the VCAA to children who enter the federal system from military bases. The broad language used by Congress in the VCAA further clarifies their intent: "No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years." We agree with the Court in *Dowty* when they said, "Article 43 is filled with exceptions and exclusions from the basic statute of limitations. Adding one more exception has no effect on the basic framework of military law." *Id.* at 110.

Under the circumstances discussed above, we find the statute of limitations found at 18 U.S.C. § 3283 which was originally included in the VCAA, applies to courts-martial involving children who are physically or sexually abused by a military member. Support for this finding includes the unambiguous language in the VCAA; the legislative history; the implementation of the VCAA by the Department of Defense; and the previous judicial application of the VCAA to members of the armed forces. In doing so, we refuse to create a special status for members of the armed forces in contravention of the clear purpose of Congress in enacting the VCAA.

■ The next question is whether the attempted rape and indecent acts the appellant was convicted of fall within the definition of child abuse covered by the VCAA. Child abuse is defined as "the physical or mental injury, sexual abuse or exploitation, or negligent treatment of a child." 18 U.S.C. § 3509(a)(3). Sexual abuse is further defined as "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage

in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children." 18 U.S.C. § 3509(b)(8). We find that the appellant's offenses fall within the definitions of child and sexual abuse in the VCAA.

The appellant also contends that even if 18 U.S.C. § 3283 is applicable to courts-martial, its application here would constitute an *ex post facto* violation of the Constitution because the statute was enacted after Article 43, UCMJ, tolled these offenses. However, this argument ignores the history of the statute. Precisely the same argument was raised in *United States v. Begay*, 1998 WL 10242, 1998 U.S.App. LEXIS 508 (10th Cir. 1998). In rejecting Mr. Begay's claim that his 1991 indictment on one count of child sexual abuse occurring in 1986 was barred, the 10th Circuit Court of Appeals found that with the enactment of the VCAA on 29 November 1990, the tolling provisions of 18 U.S.C. § 3509(k) and subsequently 18 U.S.C. § 3283, were effective prior to the running of the 5–year statute of limitations generally applicable to offenses under Title 18. Under Article 43, UCMJ, the earliest the statute could have run was 1 August 1992, almost two years after the enactment of the VCAA.

### III. Denial of Defense Witnesses

The appellant argues that the military judge erroneously denied his motion to compel the attendance of three witnesses at his trial pursuant to R.C.M. 703. The appellant believes the military judge's denial had a cumulative effect that prejudiced his defense.

■ "The standard of review for a request to produce a witness is abuse of discretion." *United States v. Reveles*, 41 M.J. 388, 393–94 (1995). "Abuse of discretion is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action should not be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors." *United States v. Houser*, 36 M.J. 392, 397–8 (C.M.A. 1993) (quoting Magruder, J., *The New York Law Journal* at 4, col. 2 (March 1, 1962),

quoted in *Quote It II: A Dictionary of Memorable Legal Quotations* 2 (1988)).

#### a. Juanito Perez

■ The defense claimed that Mr. Perez, who lived in the Philippines, was a friend of the victim's family and knew the victim between 1987 and 1991. The appellant argues this witness was necessary to attack VCR's character for truthfulness, conduct, and motive to misrepresent the allegations against him. Mil.R.Evid. 608. The request for Mr. Perez was the result of VCR's statement to investigators that Mr. Perez sexually assaulted her in 1990. The motion to compel his attendance indicated that the sole purpose of his testimony would be to deny VCR's allegation against him.

In his written ruling attached to the record as an appellate exhibit, the military judge found that Mr. Perez did not have a sufficient basis to offer an opinion concerning VCR's character for truthfulness under Mil. R.Evid. 608(a). This was based upon Mr. Perez's confusion about who VCR was when confronted by the appellant's wife. The military judge also found that Mr. Perez's testimony would be confusing and unfairly prejudicial. The military judge ruled that Mr. Perez would not be able to testify to deny VCR's allegation because his testimony would amount to extrinsic evidence of specific conduct that is prohibited by Mil.R.Evid. 608(b). Finally the military judge found that Mr. Perez's testimony would not establish that VCR had a motive to misrepresent her allegations against the appellant. Mil. R.Evid. 608(c).

The facts here are very similar to the facts in *United States v. Velez*, 48 M.J. 220 (1998). In *Velez*, the accused was convicted of two specifications of rape and two specifications of assault. At trial, he sought to cross-examine one of the victims about her past sexual behavior including, (1) a statement she made to appellant's wife that she woke up naked in another Marine's barracks room after drinking; (2) purportedly putting her hand in a man's pants while intoxicated in a public bar; and (3) a complaint of rape she made against a Marine who lived in their neighborhood. The defense asserted that it

wanted to cross-examine the alleged victim on these matters in order to attack or impeach her credibility. In affirming the military judge's decision denying cross-examination of the victim on these matters, the Court said that the accused's argument that the prior complaint demonstrated that victim was "predisposed" to making a false complaint was "logically and legally unsupported." *Id.* at 227. Further, the Court said "The mere filing of a complaint is not even probative of the truthfulness or untruthfulness of the complaint filed. (Citation omitted). Thus, its relevance on the question of credibility of a different complaint in an unrelated case, such as appellant's, entirely escapes us." *Id.* The Court also stated that because the accused's defense was based upon the assertion that the sexual incident never happened, (which was the appellant's tactic here), "the victim's past sexual history was not relevant." *Id.* at 228.

VCR's allegation that Mr. Perez sexually assaulted her in 1990 and his subsequent denial is not probative of her truthfulness concerning the allegations against the appellant. It is not unexpected or surprising that when confronted with an allegation of rape, an individual would issue a speedy denial. At times, even consensual sexual activity is often denied. The evidence supports the findings of fact made by the military judge and his determination that Mr. Perez's testimony was not admissible. Therefore, the military judge did not abuse his discretion in denying the appellant's motion to compel the attendance of Mr. Perez at trial.

### b. Special Agent Joy

■ Air Force Office of Special Investigations (AFOSI), Special Agent (SA) Joy interviewed VCR in Australia after Mrs. McElhaney discovered the appellant's relationship with VCR. At trial, the defense moved to compel SA Joy's attendance by indicating that he would testify that VCR could not recall the time frames in which the acts with the appellant took place, that VCR's mother assisted her during the interview, that VCR made prior inconsistent statements about penetration, and that she was punished by her parents after her relationship with the appellant was discovered.

In response to the motion, the government presented an affidavit from SA Joy that refuted the appellant's offer of proof about his expected testimony. After reviewing the affidavit, the military judge found that the appellant failed to demonstrate the relevance or necessity of SA Joy's testimony and denied the motion to compel his attendance.

We agree with the military judge that SA Joy's testimony was not relevant or necessary. *United States v. Powell,* 49 M.J. 220 (1998). SA Joy's affidavit indicates that VCR was able to recall the time frame of the appellant's criminal acts against her and was not helped by her mother during the interview. It also establishes that VCR's statements about penetration were consistent and that SA Joy had no personal knowledge whether VCR had been punished for her relationship with the appellant.[5] Finally, the investigator, who took the notes of the interview that were provided to the appellant, was present at trial and could have been called as a witness by the defense. The military judge did not err in failing to compel the government to produce SA Joy.

### c. Mr. Richter

■ The appellant claims the military judge also erred by failing to compel the attendance of Mr. Thomas Richter, who would have testified that as a child VCR was present in her family's brothel and could have observed sexual activity. According to the appellant, this testimony would have established the victim had the knowledge to fabricate her allegations against him and also demonstrated that she had a motive to lie. The military judge, in denying the appellant's motion to compel Mr. Richter's attendance, found that the prejudicial effect of his testimony far outweighed its probative value and that it could confuse or mislead the court members concerning the character of the victim.

5. VCR admitted that her stepfather punished her when he learned about her relationship with the appellant. This provided the appellant with all the evidence he needed to argue that she had fabricated the sexual nature of their relationship.

Mr. Richter would have only been able to testify as to what he observed occurring in the bar. It would have been improper for him to testify about what he believed VCR might have seen while in the bar. Furthermore, we fail to see how this was relevant or provided any motive for VCR to fabricate her story about her relationship with the appellant when the appellant's own letters to VCR discussed safe sexual practices. Mil.R.Evid. 401.

### IV. Cross–Examination of VCR

The appellant claims the military judge erred by improperly limiting the cross-examination of the victim. We are left to speculate exactly what the appellant is referring to in this assignment of error. However, the record of trial reveals that the military judge prohibited the appellant from cross-examining VCR about her allegation involving Mr. Perez and the fact that her mother and stepfather ran a brothel.

 The Confrontation Clause of the Sixth Amendment to the Constitution provides that an accused enjoys the right to confront the witnesses against him in a criminal proceeding. "While the right to cross-examination is broad, it is not unlimited in scope; nor can it be conducted without due regard for applicable rules of evidence. (Citations omitted). Reasonable limits on cross-examination intended to attack a witness's credibility may be based on concerns such as harassment, prejudice, confusion of issues, witness safety, repetitiveness, or marginal relevancy." *Velez*, 48 M.J. at 226. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The nature and extent of cross-examination is an area in which the trial judge exercises broad discretion. *United States v. Rodriguez*, 28 M.J. 1016 (A.F.C.M.R.1989). A military judge's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *United States v. Gray*, 40 M.J. 77, 80 (C.M.A.1994).

 We have already discussed the lack of relevancy of Mr. Perez's testimony in relation to the holding in *Velez*. Moreover, VCR's life with her mother and stepfather would only be relevant if the prosecution tried to argue that she could have only gained knowledge about sexual matters from the appellant. The military judge correctly limited the scope of the cross-examination of VCR while placing the government on notice that he would allow the appellant to explore those areas if the prosecution opened the door.

### V. Marital Privilege

After the prosecution rested, the appellant indicated he intended to call his wife as a witness during his defense and asked the military judge to prohibit trial counsel from questioning her about a statement he made to her. Mil.R.Evid. 504. The military judge found that the marital privilege did not apply to appellant's statement because it involved a crime against a third person that was committed while committing a crime against the marital relationship. The appellant contends he was prejudiced by the military judge's decision to allow this examination of his wife.

 We review a military judge's decision to admit evidence, including matters under Mil.R.Evid. 504, for an abuse of discretion. *United States v. Peterson*, 48 M.J. 81 (1998). However, the question of whether a privilege applies is a mixed question of law and fact. *United States v. Napoleon*, 46 M.J. 279, 284 (1997). The burden of establishing that a communication is a confidential marital communication that is entitled to protection under Mil.R.Evid. 504 is on the party claiming the privilege. *United States v. McCarty*, 45 M.J. 334 (1996).

 Mil.R.Evid. Rule 504 provides in part, "A person has a privilege during and after the marital relationship to refuse to disclose, and to prevent another from disclosing, any confidential communication made to the spouse of the person while they were husband and wife and not separated as provided by law." It defines a confidential communication as "made *privately* by any person to the spouse of the person and is *not intended to be disclosed to third persons* other than those reasonably necessary for transmission of the communication." (Emphasis added). It also provides for an exception "[i]n proceedings in which one spouse is charged with a crime against the person or property of the

other spouse or a child of either, or with a crime against the person or property of a third person committed in the course of committing a crime against the other spouse." Mil.R.Evid. 504(c)(2)(A).

█ The military judge's ruling clearly implies he concluded that VCR did not fall within the terms of the first clause of the exception regarding crimes against a child of either party. *Id.*[6] *Instead, he ruled that the appellant's sexual acts with VCR also constituted a crime against the appellant's wife. Military case law, however, does not support that interpretation.* "[W]hether an offense charged against one spouse injures the other depends not upon the outrage to her sensibilities or a violation of the marital bonds, but upon some direct connection with her person or property." *United States v. Massey,* 35 C.M.R. 246, 254 (C.M.A.1965) (holding the offense of carnal knowledge, even when incestuous, is not a direct injury to the spouse in terms of the exception to the marital privilege). *See also United States v. Rener,* 37 C.M.R. 329 (C.M.A.1967). Neither the person nor property of the appellant's wife was directly affected by his acts with VCR. Even though the military judge relied on the wrong rationale to admit Mrs. McElhaney's testimony concerning the appellant's statement to her, we find the statement admissible because appellant waived any privilege he may have had.

During cross-examination, Mrs. McElhaney testified about her observations of the appellant and VCR during their visit to the Philippines in July 1994. Shortly after returning from the Philippines, she discovered the letter and called the appellant, who was TDY, to demand an explanation about his relationship with VCR. During this conversation, the appellant told her that he had been involved with VCR for years, was in love with VCR, and had tried to have sex with VCR in July 1994 but got scared and stopped. On redirect, the appellant's wife clarified her testimony about what her husband told her. According to her, he said "they started kissing and all that, and he had got scared, so they had to stop."

After their relationship was discovered, the appellant wrote a letter to VCR's parents telling them the same things he told his wife about his relationship with their daughter and specifically mentioned "stolen kisses." He denied engaging in any sexual acts with VCR. He also wrote a letter to VCR telling her what he told his wife and VCR's parents, and informed her that he would keep a few "secrets" about their relationship from the others. These letters were admitted during the prosecution's case-in-chief.

These facts establish that the appellant voluntarily disclosed the same information to VCR and her parents that he told his wife. This constitutes waiver of the marital privilege under Mil.R.Evid. 510(a). Therefore, the appellant suffered no prejudice as a result of the military judge's ruling.

## VI. Future Dangerousness

At the time of trial, Lieutenant Commander (Dr.) Morales was a child psychiatrist at the Yokosuka Naval Hospital. He was first called by the prosecution as a witness in their case-in-chief and was recognized, without defense objection, by the military judge as an expert in child psychology. After the appellant was convicted, he was recalled by the prosecution during sentencing to present testimony about the appellant's future dangerousness and the impact of the appellant's acts on VCR. The appellant objected, citing an insufficient foundation for Dr. Morales' testimony because he never examined the appellant. After hearing Dr. Morales' testimony in an Article 39(a), UCMJ, session, the military judge ruled that there was a sufficient factual basis for Dr. Morales to testify about the appellant's future dangerousness and the victim impact on VCR. The military judge also allowed the prosecution to solicit from Dr. Morales that the appellant met the clinical criteria of a pedophile. The appellant contends the military judge erred in allowing this testimony from Dr. Morales.

---

6. This is a gap which the drafters may deem appropriate to address by extending the exception to cover a child for whom either is the guardian or stands *In Loco Parentis. See, e.g.,* Revised Code of Washington 5.60.060(1); *State of Washington v. Modest,* 88 Wash.App. 239, 88 Wash.App. 239, 944 P.2d 417 (1997) and cases cited therein.

Decisions by a military judge on the admissibility of evidence are reviewed for a clear abuse of discretion. *United States v. Zakaria*, 38 M.J. 280, 283 (1993). An abuse of discretion is action that is arbitrary, clearly unreasonable or clearly erroneous. *United States v. Travers*, 25 M.J. 61 (1987). If error is found, this court tests for prejudice. Article 59(a), 10 U.S.C. § 859(a); Mil.R.Evid. 103.

The admission of sentencing evidence is governed by R.C.M. 1001 which allows trial counsel to present evidence in aggravation, including impact on the victim, and evidence of rehabilitation potential of the accused. To be relevant, the evidence must tend "to prove or disprove the existence of a fact or facts permitted by the sentencing rules." *Zakaria*, 38 M.J. at 282 (quoting *United States v. Martin*, 20 M.J. 227, 230 n. 5 (1985)).

■■■■■ The standard of review for admission of expert testimony is abuse of discretion. *United States v. Houser*, 36 M.J. 392 (C.M.A.1993). The trial judge must determine that an expert's testimony rests on a reliable foundation and is relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Admissibility is dependent upon whether the evidence or expert's testimony pertains to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. *Id.* at 590–91, 113 S.Ct. 2786.

To establish the foundation for admission of his opinion testimony about the appellant's rehabilitation potential, Dr. Morales testified he reviewed the report of investigation, the appellant's letters to VCR, and all of the evidence from an investigation involving allegations by the appellant's natural daughter that he sexually abused her.[7] He also conducted interviews with VCR and her mother, and listened to VCR's testimony in court.

■■■■■ In *United States v. Stinson*, 34 M.J. 233, 238 (C.M.A.1992), the then Court of Military Appeals announced a three-part test

under Mil.R.Evid. 702 for the admissibility of expert testimony, (1) Was the witness "qualified to testify as an expert?" (2) Was the testimony "within the limits of [the expert's] expertise?" (3) Was the "expert opinion based on a sufficient factual basis to make it relevant?" In *United States v. Banks*, 36 M.J. 150 (C.M.A.1992) the Court added a fourth part to the test, (4) "Does the danger of unfair prejudice created by the testimony outweigh its probative value?" *Id.* at 161. (quoting *United States v. Neeley*, 25 M.J. 105, 107 (CMA 1987)). We find the evidence in the record satisfies these questions and note that the military judge did conduct the required balancing. Mil.R.Evid. 403. The fact that Dr. Morales never examined the appellant goes to the weight to be given his testimony not its admissibility. *Stinson*, 34 M.J. at 239 (citing *Barefoot v. Estelle*, 463 U.S. 880, 903–04, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). Furthermore, future dangerousness is a relevant consideration in sentencing as evidence of rehabilitation potential under R.C.M. 1001(b)(5). *United States v. Williams*, 41 M.J. 134, 138–39 (C.M.A.1994).

■■■■■ Dr. Morales also testified that the appellant's behavior met the criteria for pedophilia but that he could not diagnose the appellant as a pedophile because he had not examined him.

Pedophilia is somebody, who for a period of at least six months, has intense sexual urges to or is just aroused by somebody under the age of 13. And they would have to be themselves at least 16 years of age, and be at least five years older than the victim.

Even a layman, when given this definition, could conclude, based upon the facts in evidence, that the appellant's behavior with VCR met these criteria. His own letters to VCR document his obsession with her.

We find Dr. Morales' testimony was admissible and relevant during sentencing because it addressed the appellant's rehabilitation po-

---

7. His natural daughter, after providing a taped interview to AFOSI agents in the United States that indicated her father sexually abused her, refused to attend the trial which took place in Japan. The military judge did not admit the taped interview or the testimony of the OSI agents who conducted the interview. This resulted in the withdrawal of this allegation from the trial.

tential. The appellant's letters more than adequately demonstrate an emotional and sexual obsession for VCR beginning in 1987 when she was nine years old and continuing until August 1994. "What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine." *Williams,* 41 M.J. at 139. (quoting *Jurek v. Texas,* 428 U.S. 262, 275–76, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976)).

VII. Factual Sufficiency of the Evidence

The appellant argues his conviction on all of the charges and specifications is factually insufficient because VCR's testimony was implausible and inconsistent.

 The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987).

 VCR's testimony provides sufficient facts to affirm the appellant's conviction. The members did not find that her testimony established his guilt on all of the charges and specifications. They determined the evidence was insufficient to find him guilty of rape but were satisfied that he attempted to rape VCR between 1 August 1987 and 31 August 1988. They acquitted him of committing sodomy with VCR and excepted certain words from the specification alleging indecent acts during that same period. The evidence in the record of trial contains sufficient evidence to affirm their findings of guilty.

The appellant also argues that VCR's testimony is not believable because defense witnesses, including appellant's wife, testified that some of the acts could not have occurred. However, we find VCR's testimony credible. Further, the appellant's letters and the observations of his wife corroborate his romantic relationship with VCR. VCR, who by her own admission was in love with the appellant, had no reason to fabricate these events. The defense contention that she lied about these sexual acts with the appellant after being punished by her parents is pure speculation in view of her long standing and

documented emotional attachment with the appellant.

The appellant points out that none of his letters to VCR discuss sexual acts but we find this factor unpersuasive. Under the circumstances, the appellant would have been reckless to record sexual interaction with VCR because he did not know whether anyone else was reading his letters to her. His own letters and cards show he was cognizant of this fact. We are convinced of the appellant's guilt beyond a reasonable doubt.

VIII. *Ex Post Facto* Application of Articles 57(a) and 58b, UCMJ

The appellant's *ex post facto* claims regarding Articles 57(a) and 58b, UCMJ, 10 U.S.C. §§ 857(a), 858b, were resolved in his favor by the United States Court of Appeals for the Armed Forces in *United States v. Gorski,* 47 M.J. 370 (1997). We will direct corrective action in the decretal.

IX. Appellant's *Grostefon* Submissions

The appellant presented 11 matters, out of time, for our consideration. His submissions on the statute of limitations, instruction on a lesser included offense, marital privilege, failure to compel the attendance of three defense witness, restrictions on cross-examination of VCR, testimony of Dr. Morales, and factual insufficiency have been considered by us and are rejected. However, four of his submissions deserve brief comment.

a. **Inaccurate Pretrial Advice.**

 The appellant contends that the pretrial advice to the convening authority was inaccurate, defective, and misleading on the question of the application of Article 43, UCMJ and 18 U.S.C. § 3283. Our reading of the advice demonstrates the convening authority was correctly advised that an issue concerning the statute of limitations for the offenses occurring in 1987 and 1988 was raised by the facts. As a result, he was not misled. Further, the appellant waived any objection to the pretrial advice by failing to object prior to the entry of pleas. *United States v. Murray,* 25 M.J. 445, 449 (C.M.A. 1988); R.C.M. 905(b)(1).

## b. Improperly Convened Court–Martial

The appellant claims his court-martial was improperly convened because the general court-martial convening authority did not personally sign the convening orders and the staff judge advocate selected the members. The appellant argues this is an improper delegation.

■ The convening authority cannot delegate his authority to select the members or convene a court-martial. R.C.M. 503 and 504. However, the convening authority's notation and signature on the pretrial advice is *prima facie* evidence that he personally selected the members and referred the charges to a general court-martial. The signature of the staff judge advocate in the referral block on the charge sheet and the convening order, for the commander, does not amount to an improper delegation of the convening authority's power when done at his direction.

## c. Interpreter

■ The appellant contends the interpreter used at his court-martial to translate the testimony of Joseph Catan was inadequate and that this prejudiced the defense.

R.C.M. 604 requires an interpreter to be subject to the rules relating to qualification as an expert and to be administered an oath or affirmation that they will make a true translation. The interpreter in this case, Mrs. Emde, was sworn and indicated that she worked part-time in the community near Yokota AB. She was not examined by either side to determine her qualifications and no objection was lodged against her.

Mr. Catan began his testimony by answering the initial questions posed by defense counsel in English. Defense counsel than asked the military judge to instruct the witness to answer his questions in his native language. The remainder of his testimony, both direct and cross-examination, shows that Mr. Catan understood the questions and provided answers that were consistent with the defense offer of proof about his testimony in their request for the government to obtain him as a defense witness.

His testimony was favorable to the defense and consistent with their theory of the case. He testified that in April 1991, he stayed in a hotel on Clark AB with his sister, VCR, and the appellant. He said that the room had two beds and that the appellant slept in one while he and the two girls slept in the other. He also said he never saw VCR in bed with the appellant. In response to a question from trial counsel about whether he was suspicious of a relationship between the appellant and VCR, he replied "That's crazy."

Although the interpreter was not questioned to establish her qualifications by either side, the record of Mr. Catan's testimony leads us to conclude that this error did not materially prejudice the appellant. Article 59(a), UCMJ.

## d. Instruction Concerning Prior Inconsistent Statements by Mrs. McElhaney

■ The appellant complains that the military judge erred by instructing the members that his wife made statements prior to trial that were inconsistent with her testimony. We review a military judge's decision to provide instructions to the members for an abuse of discretion. *United States v. Smith,* 34 M.J. 200 (C.M.A.1992). However, because no objection to this instruction was raised by the appellant during trial, thereby invoking the principle of waiver under R.C.M. 920(f), we will apply a plain error standard of review. *United States v. Powell,* 49 M.J. 460 (1998).

A close reading of Mrs. McElhaney's testimony reveals that she did make statements in court that were inconsistent with some of her prior declarations. The military judge was correct in instructing the members about her prior inconsistent statements.

## X. Decretal

The collection of adjudged forfeitures or execution of a reduction in rank prior to the date of the convening authority's action pursuant to Article 57(a), UCMJ, and automatic collection of forfeitures not included in the

sentence of the court-martial pursuant to Article 58b, UCMJ, are declared to be without legal effect. Any such forfeitures already collected from the appellant will be restored at the appropriate pay grade. The case need not be returned to this Court following administrative correction unless further appellate review is required. Accordingly, the findings and sentence are

AFFIRMED.

Chief Judge SNYDER and Judge SENANDER concur.