IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 78692-0-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| THEPHAXAY PANYANOUVONG, | |
| Appellant. | FILED: March 2, 2020 |

BOWMAN, J. — Thephaxay Panyanouvong appeals his conviction for domestic violence assault in the second degree. First, Panyanouvong challenges the trial court's admission of part of a 911 call that he claims was hearsay and improperly bolstered the victim's credibility. He also challenges the court's admission of prior bad act evidence admitted to show the victim's fear of intimidation and asserts the court erred by excluding evidence of the victim's history of domestic violence. Finally, he claims that cumulative error deprived him of a fair trial. Finding no error or abuse of discretion, we affirm.

FACTS

In July 2017, Panyanouvong and M.H. began a romantic but turbulent three-month-long relationship. Shortly thereafter, Panyanouvong and his five-year-old son moved into M.H.'s residence.

M.H. testified that in August 2017, Panyanouvong became jealous and "punched me in the face approximately 12 times." M.H. did not report this incident to the police.

In September 2017, M.H. attempted to end the relationship and told Panyanouvong, "I can't do this and I don't feel safe." Afterward, Panyanouvong "became extremely enraged," kicked her in the head, and punched her "so hard" that "it just split open my face like a piñata" and "[b]lood gushed everywhere."

M.H. stated that she did not leave her apartment for the next several days because the "implied threat" that she was not allowed to leave "was very clear." She also felt that Panyanouvong's son would be placed in danger if she left. Approximately four days after the incident on September 17, M.H. called a former boyfriend and business partner Jeffrey Vigil, who encouraged her to call 911.[1] M.H. then called 911 and told the dispatch operator that her emergency was "[u]mm, domestic violence"; she had "really bad bruising around my eye"; and "[t]his guy," who has "been living at my apartment for three months," has "basically been holding me hostage."

Panyanouvong told a different version of the events. He described a relationship in which M.H. attempted to control him through threats, fear, and intimidation. Panyanouvong acknowledged that he and M.H. verbally abused each other but denied ever threatening or physically hurting her. He denied that he ever tried to control M.H.'s actions. Panyanouvong claimed that M.H. came

---

[1] In approximately June 2017, M.H. ended a four-year relationship with Vigil. The couple lived together with Vigil's young daughter.

2

home one evening with bruises and refused to tell him how she had received them.

The State charged Panyanouvong with second degree assault (count 1), unlawful imprisonment (count 2), and fourth degree assault (count 3). The State alleged all of the offenses were crimes of domestic violence and that the second degree assault occurred within sight or sound of Panyanouvong's minor son. Panyanouvong pleaded not guilty.

During pretrial motions, the court granted the State's request to admit portions of M.H.'s 911 call and evidence of Panyanouvong's alleged verbal abuse of his son at trial. The court denied Panyanouvong's request to introduce evidence of M.H.'s history of domestic violence.

The jury convicted Panyanouvong of domestic violence assault in the second degree committed within the sight or sound of his minor son but acquitted him of the remaining charges. Panyanouvong appeals.

## ANALYSIS

Panyanouvong challenges several of the trial court's evidentiary rulings. A trial court's decision on the admissibility of evidence is reviewed for abuse of discretion. State v. Dobbs, 180 Wn.2d 1, 10, 320 P.3d 705 (2014). A trial court abuses its discretion when a decision is manifestly unreasonable or based on untenable grounds or reasons. Dobbs, 180 Wn.2d at 10.

### Admission of 911 Recording

Panyanouvong challenges the trial court's admission of part of the 911 call that he argues is hearsay. "Hearsay" is "a statement, other than one made by

the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). "Hearsay is not admissible except as provided by these rules, by other court rules, or by statute." ER 802. Specific exceptions to the hearsay rule include an excited utterance or a statement of the declarant's then existing mental, emotional, or physical condition. ER 803(a). "[U]nder the excited utterance exception, '[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition' is not excluded as hearsay." State v. Brush, 183 Wn.2d 550, 560, 353 P.3d 213 (2015)[2] (quoting ER 803(a)(2)). ER 803(a)(3) defines "then existing mental, emotional, or physical conditions" as follows:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Before trial, the State sought to admit as "excited utterances" portions of M.H.'s 911 call relating to being held hostage as well as descriptions of her injuries as statements of "then existing . . . physical conditions." The court agreed such portions were admissible. However, the court ruled that other portions of the 911 call were inadmissible and should be redacted. In particular, the court granted Panyanouvong's objection to M.H.'s description of the alleged assault, ruling that such statements were made several days after the incident and did not meet the "excited utterance" exception to the hearsay rule. The State then redacted the inadmissible portions from the 911 call.

---

[2] Alteration in original.

The next day, the State played an audio recording of the redacted 911 call for the court's and Panyanouvong's consideration. In the redacted recording, the 911 operator asks M.H., "[Y]ou said your ex said there's people on the way. Is he the one that assaulted you or is it someone else?" Panyanouvong objected and argued the 911 operator's "reference to the assault . . . starts to get into territory that the Court specifically excluded because the allegations of the assault were too far back in time to . . . meet the criteria for a hearsay exception." Panyanouvong asked that the comment from the 911 operator be redacted. The State argued that the portion of the 911 call colloquy was not being offered for the truth of the matter asserted but rather to provide context to the conversation.

The court denied Panyanouvong's motion. The court explained:

> The mere fact that the . . . operator is surmising there must be some sort of an assault here because [M.H. is] describing injuries is . . . not part of what the Court was trying to exclude as being an excited utterance that's outside of the realm. It's just an inquiry from the operator.

The court concluded that since other inadmissible portions had been redacted, the operator's inquiry about an assault did not have any "independent meaning" and did not need to be redacted from the 911 recording. When asked if he had "any other objections" to admitting the 911 call, Panyanouvong answered, "No, Your Honor."

Based on this record, we conclude that the trial court appropriately addressed and disposed of Panyanouvong's sole objection to the 911 call on hearsay grounds. The operator's question was not an assertion of fact and was

not offered to prove the truth of the matter asserted. State v. Modest, 88 Wn. App. 239, 249, 944 P.2d 417 (1997).

Panyanouvong now claims for the first time that the trial court abused its discretion by refusing to redact more of the operator's inquiry about an assault from the 911 recording because it improperly "bolstered" M.H.'s credibility. The State asserts that Panyanouvong failed to preserve this claim of error. We agree.

To preserve an evidentiary error for appeal, a party must timely object below to give the trial court the opportunity to prevent or cure the error. ER 103(a)(1); State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). Panyanouvong did not raise the bolstering objection in the trial court and offers no reason why we should review it now. See RAP 2.5(a);[3] State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985) ("A party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial."); State v. Mak, 105 Wn.2d 692, 718-19, 718 P.2d 407 (1986) (a party who objects to the admissibility of evidence on one ground at trial generally may not raise a

_____

[3] RAP 2.5(a) states:

The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right. A party or the court may raise at any time the question of appellate court jurisdiction. A party may present a ground for affirming a trial court decision which was not presented to the trial court if the record has been sufficiently developed to fairly consider the ground. A party may raise a claim of error which was not raised by the party in the trial court if another party on the same side of the case has raised the claim of error in the trial court.

In his opening brief, Panyanouvong does not address RAP 2.5(a) and offers no basis to review the "bolstering" claim for the first time on appeal. He did not file a reply brief. The limited exceptions to the general rule set forth in RAP 2.5(a) do not apply here because Panyanouvong makes no claim of a constitutional magnitude.

different ground on appeal). Accordingly, Panyanouvong has failed to preserve his claim of error.

Evidence of Verbal Abuse

The State asked the trial court to admit evidence that Panyanouvong verbally abused his son. The court granted the request but required that such evidence be accompanied by an appropriate limiting instruction. Panyanouvong contends the court abused its discretion when it admitted the evidence. He argues that such evidence "served only to unfairly prejudice" him in light of the evidence of other domestic violence incidents between him and M.H. We disagree.

ER 404(b) prohibits evidence of prior bad acts to show the defendant's character or propensity to commit crimes. State v. Lough, 125 Wn.2d 847, 862-63, 889 P.2d 487 (1995). However, evidence of prior bad acts may be admitted for other purposes. State v. Ragin, 94 Wn. App. 407, 410-11, 972 P.2d 519 (1999). To prove unlawful imprisonment, the State had to establish that Panyanouvong knowingly restrained M.H.'s movement between September 10 and September 17, 2017. RCW 9A.40.040(1).[4]

If a party wants to introduce a prior bad act for a purpose other than for propensity, the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for admitting the evidence, (3) determine whether the evidence is relevant to an element of the current charge,

---

[4] "Restrain" means "to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(6). "Without consent" may be accomplished by "physical force, intimidation, or deception." RCW 9A.40.010(6).

and (4) find that the probative value of the evidence outweighs its prejudicial effect. State v. Foxhoven, 161 Wn.2d 168, 175, 163 P.3d 786 (2007); State v. Saltarelli, 98 Wn.2d 358, 362-63, 655 P.2d 697 (1982). The trial court must conduct this four-part ER 404(b) analysis on the record. State v. Smith, 106 Wn.2d 772, 776, 725 P.2d 951 (1986) (citing State v. Jackson, 102 Wn.2d 689, 694, 689 P.2d 76 (1984)). In doubtful cases, the court should exclude the evidence. Smith, 106 Wn.2d at 776. If the court admits the evidence, it must also give a limiting instruction to the jury. Foxhoven, 161 Wn.2d at 175. We presume that jurors have followed that instruction absent evidence proving the contrary. State v. Montgomery, 163 Wn.2d 577, 596, 183 P.3d 267 (2008).

Here, the State argued that evidence of Panyanouvong verbally abusing his son was relevant because it helped explain why M.H. felt restrained. The State posited M.H. feared that Panyanouvong would harm his son if she left the apartment. Panyanouvong did not deny verbally abusing his son. Rather, he argued the evidence should be excluded because it was unfairly prejudicial and highly inflammatory.

After carefully considering the parties' arguments, the trial court conducted the four-part ER 404(b) analysis on the record and ruled:

> I agree . . . that the threats related to [Panyanouvong's son] are far more probative than they are prejudicial.
> Certainly classic [domestic violence] things are . . . the perpetrator using threats to animals or to objects or whatever as a means of controlling — or children, obviously in this case, threats to . . . loved ones . . . is a classic means of control.
> And so it seems clear to me that . . . to the extent that [M.H.] believed that Mr. Panyanouvong was . . . in fact, threatening [his son], . . . that's very probative of the issue of the . . . pattern of

8

control that he had over [M.H.] that would . . . support the unlawful imprisonment charge[ ].

The court then ruled that limiting instructions regarding this evidence are appropriate and encouraged the parties to "work on reaching agreement on" such instructions.

The court gave jurors the following limiting instruction:

> Testimony of assaults other than the ones charged in Counts 1 and 3 is only to be considered in your deliberations regarding Count 2: Unlawful Imprisonment. It is not to be considered in determining whether Counts 1 and 3 are proven beyond a reasonable doubt.

While this limiting instruction did not directly mention verbal abuse, neither side objected nor took any exception to the instruction. This unchallenged instruction became the law of the case. State v. France, 180 Wn.2d 809, 815, 329 P.3d 864 (2014). The court's decision to admit evidence of Panyanouvong's verbal abuse for the limited purpose specified here was not manifestly unreasonable or based upon untenable grounds.

### Victim's Prior Domestic Violence

Prior to trial, the court denied Panyanouvong's request to admit evidence of prior domestic violence between M.H. and Vigil. Panyanouvong claims that the trial court should have admitted the evidence because the State opened the door when it cross-examined him.

A trial court may admit otherwise inadmissible evidence when a witness " 'opens the door' " to this evidence during testimony "and the evidence is relevant to some issue at trial." State v. Stockton, 91 Wn. App. 35, 40, 955 P.2d 805 (1998) (citing State v. Tarman, 27 Wn. App. 645, 650-52, 621 P.2d 737

(1980)). This rule preserves fairness. State v. Gefeller, 76 Wn.2d 449, 455, 458 P.2d 17 (1969). It allows courts to guard against one party obtaining an unfair advantage by introducing evidence about an excluded subject while the other party remains barred from doing so. Gefeller, 76 Wn.2d at 455. We review a trial court's application of the "open-door" rule for an abuse of discretion. State v. Wilson, 20 Wn. App. 592, 594, 581 P.2d 592 (1978).

Here, in its pretrial rulings, the court denied Panyanouvong's motion to admit evidence of M.H.'s domestic violence history because such evidence was irrelevant. The court explained that Panyanouvong was not trying to introduce "other suspect" evidence and he offered no other probative value.[5]

At trial, the State asked Vigil if he assaulted M.H. during the months of August and September 2017, the period during which M.H. was living with Panyanouvong. Vigil responded, "No." Outside of the jury's presence, Panyanouvong claimed that the State's questioning opened the door to asking Vigil whether there had been domestic violence in his prior relationship with M.H. Although Panyanouvong "recognize[d] that this looks like propensity" evidence, he argued that "I think in the context of the relationship it's relevant and I think it ought to be permitted." The court denied Panyanouvong request, ruling, "I don't see how it is anything other than propensity." This was not an abuse of discretion.

---

[5] "[I]f there is an adequate nexus between the alleged other suspect and the crime, such evidence should be admitted." State v. Franklin, 180 Wn.2d 371, 373, 325 P.3d 159 (2014). Other than a general denial to the charges, Panyanouvong disclosed "no additional defense" and admitted he had no "witnesses who can testify" that Vigil saw M.H. between July and September 2017.

Panyanouvong later testified that he was fearful of M.H. and was intimidated by her. On cross-examination, the State questioned Panyanouvong about jail telephone calls during which he said M.H. "was weak, especially around her ex" Vigil. The State elicited testimony from Panyanouvong that he wanted to "protect" M.H. from Vigil. Shortly thereafter, Panyanouvong claimed that the State's cross-examination opened the door to evidence of the domestic violence history between Vigil and M.H., arguing that it would "provide context" to why he wanted to protect M.H. from Vigil. The court again denied Panyanouvong's request, ruling that "[i]t's basically just propensity evidence" and the prior relationship between Vigil and M.H. does not shed any light on the assaults at issue.

Because Panyanouvong did not establish a nexus between Vigil and the assaults at issue, we agree with the trial court that propensity was the only purpose for which he was offering the prior domestic violence evidence. The court did not abuse its discretion.

### Cumulative Error

Panyanouvong contends cumulative error denied him a fair trial. The cumulative error doctrine applies "when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390

(2000). Because Panyanouvong has not identified any errors, there cannot be cumulative error.

We affirm.

WE CONCUR: